381 So.2d 690 (1980)
Joseph Green BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 46925.
Supreme Court of Florida.
January 31, 1980.
Rehearing Denied April 21, 1980.
*691 J. Michael Shea, Tampa, for appellant.
Jim Smith, Atty. Gen., and Charles W. Musgrove, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This is an appeal from a conviction of murder in the first degree and a sentence of death. Jurisdiction vests pursuant to article V, section 3(b)(1), Florida Constitution.
The appellant, Joseph Green Brown, was convicted of rape, robbery, and first-degree murder. The conviction was based primarily on the testimony of Ronald Floyd, who was with the appellant immediately prior to the crime and immediately afterwards. The facts, as revealed by Floyd's testimony, *692 indicate that on the date of the murder the defendant, Floyd, and a third man known as "Poochie" who has never been located, drove to a clothing shop where the murder was committed. The appellant and Poochie parked the car across the street from the shop and walked into the shop. Apparently unaware of the reason for the visit to the shop, Floyd was left sitting in the car. After waiting for approximately fifteen minutes, Floyd got out of the car and walked over to the front door of the shop. He then heard a gunshot and immediately opened the door and entered the shop. He saw Poochie standing in the doorway of what appeared to be a storage room in the rear of the shop. When Floyd looked over the counter, he saw the body of the victim on the other side of the storage room door. The three men then raced out of the shop and drove speedily away. While in the car, Poochie turned to the appellant and said, "Man, you didn't have to do that." Floyd testified that when appellant first got out of the car to cross the street and enter the clothing store, he had a bulge in his shirt which seemed to be a gun. According to Floyd, all of these events took place in the early afternoon of July 7, 1973.
At approximately 9:30 that evening, the body of the victim was discovered in the storage room of the clothing store. She had been raped and murdered. On the evening of and subsequent to the murder, the defendant and Floyd robbed a couple in a motel and appellant sexually assaulted the female. The following day, the appellant turned himself in to law enforcement officers for the motel robbery.
A verdict of guilty was returned by the jury and an advisory recommendation of a sentence of death was rendered. Appellant was adjudged guilty and sentenced to death on July 3, 1974. On appeal, appellant seeks a new trial on the grounds that: (1) after the trial, Floyd denied that his testimony was true, although he ultimately reaffirmed the truth of his testimony; (2) the prosecuting attorney failed to furnish Floyd's statements pursuant to rule 3.220(a), Fla.R. Crim.P.; (3) the state failed to inform appellant's counsel that Floyd's testimony was given in return for favorable consideration in criminal matters pending against him; (4) the appellant was denied a fair trial by an impartial jury due to the systematic exclusion of prospective jurors who voiced opposition to the death penalty; and (5) the appellant was denied a fair trial by an impartial jury due to the prejudicial effect of admitting testimony of other unrelated offenses.

I
We are not persuaded by appellant's argument that Floyd's subsequent recantation of his trial testimony, when coupled with his reaffirmation of that testimony, constitutes grounds for a new trial. After appellant was convicted, appellant's counsel secured from Floyd an affidavit wherein Floyd stated that his testimony against appellant in this murder trial was false. The affidavit was notarized by the defense counsel and given by Floyd while he was incarcerated at the Union Correctional Institute. Floyd and appellant's counsel were the only persons present at the time the affidavit was prepared and signed. While the case was here on appeal, this Court granted appellant's motion for remand for further consideration in light of the Floyd affidavit. At a hearing on appellant's motion, Floyd admitted signing the affidavit, but reaffirmed his trial testimony and said that statements to the contrary in the affidavit were false. As to some questions, he exercised his right to remain silent. The trial court denied appellant's motion for a new trial because it was based solely on the Floyd affidavit which had been retracted and denounced by Floyd at the hearing on the motion. We considered a similar challenge in Bell v. State, 90 So.2d 704, 705 (Fla. 1956). There we said, citing Henderson v. State, 135 Fla. 548, 185 So. 625, 630 (1939):
A material error or misstatement in the testimony of a witness for the prosecution may constitute ground for a new trial. Where therefore it appears, that, on a new trial, the witness will change his testimony to such an extent as to render *693 probable a different verdict, the new trial will be granted. But recantation by witnesses called on behalf of the prosecution does not necessarily entitle defendant to a new trial. The question whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true... .
We agree with the trial court that a witness's post trial recantation of testimony, followed by a clear retraction of the post trial statements, is not sufficient to overturn a jury verdict and sentence. Under the circumstances here, as in Bell, "the trial judge's skepticism as to the truth of the matter contained in the affidavit is understandable." Id. at 705. We find no abuse of discretion in his denying the motion for new trial on this ground.

II
Appellant next charges that the state failed to furnish several of Floyd's statements to his counsel pursuant to rule 3.220(a), Fla.R.Crim.P. We previously remanded this cause to the circuit court for determination of whether Floyd's statements were in the possession of the state and not produced for the defense. After an evidentiary hearing on the matter, the trial court determined that all statements made by the witness to which the defense would be entitled were in fact furnished to defense counsel prior to the trial. Since we find nothing in the record to cast doubt on that determination, we find no merit in this point.

III
Appellant next argues that he is entitled to a new trial on grounds that the state failed to inform defense counsel that the testimony of the state's key witness, Floyd, was given in return for favorable consideration in this and other criminal matters pending against Floyd. Floyd testified at trial that the state had given him no promises of favorable consideration in this case or any other case as an inducement for his testimony against appellant. This testimony is consistent with the state's version of the pre-trial discussion with Floyd. The appellant's claim is based on statements made in the March, 1975, affidavit of Floyd which indicated that the state had promised favorable treatment in exchange for his testimony against the appellant. Although Floyd retracted part of that statement at an evidentiary hearing on the matter, at that same time he reaffirmed his claim as to promises of favorable treatment. At that same hearing, the state denied that any such promises were made. The appellant's claim rests solely on the affidavit of Floyd. There is nothing in the record to suggest that the state did in fact make such promises. Although he had an opportunity to do so at the evidentiary hearing on the matter, appellant offered no testimony to substantiate the affidavit. By remaining silent while a witness testifies in a manner wholly consistent with the state's view of the facts, we do not believe that the prosecution engaged in the "deliberate deception of a court and jurors" which is necessary to reverse a conviction on these grounds. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

IV
Appellant charges that he was denied a fair trial by an impartial jury due to the systematic exclusion of prospective jurors who voiced opposition to the death penalty. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We disagree. Nine of the ten jurors who were excluded had been excused before the appellant made his objection on this ground. In Paramore v. State, 229 So.2d 855 (Fla. 1969), vacated on other grounds, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972), we responded to a similar argument by stating:
If defendant objects to a prospective juror being excused he should make his objection before the juror is excused... . When these three prospective jurors expressed *694 their convictions against the infliction of the death penalty, appellant's attorney made no effort to qualify them for service. Perhaps he did not want them for some other reason. It was not the duty of the trial court to take other steps toward attempting to qualify the veniremen, and the Witherspoon case, supra, should not be construed as imposing this additional duty upon the trial court in the absence of any expression of a desire by defense counsel to keep the prospective jurors... . The appellant is in no position to complain in the instant case because no objection was interposed . .. .
Id. at 858.
The one prospective juror who was excused after timely objection was properly excused for cause in accordance with the Witherspoon standards. During the voir dire examination of that prospective juror, the following colloquy occurred:
A I have been listening all afternoon but sitting up there I just don't think I could recommend a verdict of death. Capital punishment.
Q (Prosecuting attorney) Well, would this stem from your feeling that you would have about the death penalty?
A Yes. I don't think I could recommend for anyone to be put to death.
Q Regardless of the circumstances.
A I don't think so. Life imprisonment yes, but not the death penalty.
.....
Q (Defense attorney) Ma'am, if I may get this just straight, I have tried to pin down exactly what it is that you feel that would hinder you in your decision. Is it the fact that you might have to recommend, should we get to the second portion of this trial, the death penalty?
A Yes, sir.
Q That is what bothers you?
A Yes.
Q Specifically that? And would it hinder you in reaching your decision as to guilt or innocence?
A Well it might if I thought I recommended guilty and he would be put to death, or whoever it was.
We have recently held that a prospective juror may be excused for cause if it is shown that he "would vote against death regardless of the facts presented or the instructions given." Jackson v. State, 366 So.2d 752, 755 (Fla. 1978). We have also upheld the exclusion of a prospective juror who said that he "wouldn't know" if he could find the defendant guilty where it might result in capital punishment. Williams v. State, 228 So.2d 377, 381 (Fla. 1969), vacated on other grounds, 408 U.S. 941, 92 S.Ct. 2864, 33 L.Ed.2d 765 (1972). There, we stated:
As was said in Witherspoon, "The most that can be demanded of a venireman * * * is that he be willing to consider all of the penalties provided by state law * * *." 391 U.S. at 522, 88 S.Ct. at 1777, n. 21. If, upon questioning, the prospective juror says he doesn't know whether he can vote for conviction if it might mean the electric chair, then the State cannot determine his willingness to consider all penalties, nor can it determine whether or not the venireman's attitude toward the death penalty would prevent him from making an impartial decision as to guilt.
Id. at 381 (emphasis in original). In this case, the prospective juror made it clear that her decision as to guilt or innocence might well be affected by her attitude toward the death penalty. We find that the trial court correctly followed the dictates of Witherspoon and properly excused this prospective juror.

V
Appellant also argues that testimony of unrelated offenses was admitted in violation of the "Williams rule." Williams v. State, 110 So.2d 654 (Fla. 1959). We have reviewed the trial testimony with regard to the motel robbery committed on the same date as this murder and conclude that the offenses are sufficiently related in time and in circumstances as to withstand a Williams *695 rule challenge. The evidence as to the motel robbery was relevant to establish both the identity of the appellant and to show a common scheme or general pattern of criminality. We reject the appellant's final argument.
We must finally determine whether the sentence of death is appropriate under the statutory scheme of capital punishment in this state. The trial judge made the following findings:
AS TO AGGRAVATING CIRCUMSTANCES:
1. That the Defendant, JOSEPH GREEN BROWN, murdered EARLENE EVANS BARKSDALE from a premeditated design to effect the death of the said EARLENE EVANS BARKSDALE.
2. That the Defendant, JOSEPH GREEN BROWN, in committing the capital felony, for which he has been convicted, in a public place knowingly through his voluntary and intentional act leading up to and during the course of the commission of the offense created a great risk of serious bodily harm and death to many persons.
3. That at the time the Defendant, JOSEPH GREEN BROWN, committed the capital felony, for which he has been convicted, he was engaged in the commission of the crimes of Robbery and Rape.
4. That the capital felony for which the Defendant, JOSEPH GREEN BROWN, is to be sentenced was committed for pecuniary gain.
5. That the murder of EARLENE EVANS BARKSDALE was especially heinous, atrocious and cruel.
AS TO MITIGATING CIRCUMSTANCES:
1. The Defendant, JOSEPH GREEN BROWN, has a significant history of prior criminal activity.
2. That the capital felony for which the Defendant, JOSEPH GREEN BROWN, was convicted was not committed while the Defendant, JOSEPH GREEN BROWN, was under the influence of extreme mental or emotional disturbance.
3. That the victim, EARLENE EVANS BARKSDALE, was not a participant in the Defendant's conduct nor did the victim, EARLENE EVANS BARKSDALE, consent to the act.
4. That the Defendant, JOSEPH GREEN BROWN, was not merely an accomplice with relatively minor participation but was rather totally involved in the commission of the capital offense.
5. That the Defendant, JOSEPH GREEN BROWN, did not act under extreme duress during the course of the commission of the offense nor was he, during that period of time under the substantial domination of another person.
6. That at the time of the commission of the offense the Defendant, JOSEPH GREEN BROWN, had the capacity to appreciate the criminality of his conduct and the ability to conform his conduct to the requirements of law.
7. The age of the Defendant, JOSEPH GREEN BROWN, to-wit: age 23 years, thus making him a mature male, has some minor significance and is, therefore, a mitigating circumstance.
THEREFORE, it is the Opinion and Determination of this Court, and the Court so finds that aggravating circumstances do exist, and that these aggravating circumstances far outweigh any circumstances which would mitigate the sentence in this case.
WHEREFORE, the Court finds that the Defendant, JOSEPH GREEN BROWN, by his willful, deliberate, malicious and premeditated act took the life of EARLENE EVANS BARKSDALE without justification or excuse. The Defendant, JOSEPH GREEN BROWN, knew full well the seriousness and the ultimate consequences of his act when he from a premeditated design took the life of EARLENE EVANS BARKSDALE. The Defendant, JOSEPH GREEN BROWN, in an extremely heinous, atrocious and cruel manner shot and killed EARLENE EVANS BARKSDALE after raping the said EARLENE EVANS BARKSDALE. The Court finds that *696 based on all the facts and circumstances presented the Defendant, JOSEPH GREEN BROWN, by the acts and methods employed in the commission of this offense has been and would continue to be a danger and a menace to society and therefore must pay the ultimate penalty, death by electrocution, as provided by the laws of the State of Florida.
The trial court improperly found that the appellant "created a great risk of serious bodily harm and death to many persons." In Kampff v. State, 371 So.2d 1007 (Fla. 1979), we held that this aggravating factor is not present unless a great risk of death is created to "many" persons, not one or two. The record before us does not support a finding that the lives of many persons were threatened by the present homicide.
The lower court did not improperly duplicate the aggravating circumstances of robbery and pecuniary gain, as appellant contends, since Brown committed the crime of rape in conjunction with the murder. Provence v. State, 337 So.2d 783, 786 (Fla. 1976).
Although improper aggravating circumstances (factors enumerated 1 and 2) went into the calculus of the trial judge's sentence decision and there was identified a mitigating circumstance (appellant's age), nevertheless, Elledge v. State, 346 So.2d 998 (Fla. 1977) does not compel a reversal of the sentence judgment in this case. This is so because unlike Elledge, here "we can know" that the result of the weighing process would not have been different had the impermissible factors not been present. 346 So.2d at 1003. The trial judge has told us in his order that the appellant's age, 22 years at the time of the offense and 23 years at the time of the trial, had only "some minor significance." When this tenuous factor is juxtaposed against at least two well-founded aggravating circumstances it is beyond reason to conclude that the trial judge's decision to impose the death penalty would have been affected by the elimination of the unauthorized aggravating circumstances. This case then is dissimilar to Elledge, but like Hargrave v. State, 366 So.2d 1 (Fla. 1978), where the doubling up of aggravating circumstances was not fatal to the imposition of a death sentence even in light of the existence of two mitigating circumstances. Here, as there, ample other statutory aggravating circumstances exist to convince us that the weighing process has not been compromised. Given the imprecision of the criteria set forth in our capital punishment statute[*] we must test for reasoned judgment in the sentencing process rather than a mechanical tabulation to arrive at a net sum. Hargrave v. State, supra; State v. Dixon, 283 So.2d 1 (Fla. 1973).
Accordingly, the judgment of conviction and sentence of death must be affirmed.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON and SUNDBERG, JJ., concur.
NOTES
[*] § 921.141, Fla. Stat. (1973).