396 So.2d 1113 (1981)
Eligaah Ardalle JACOBS, Appellant,
v.
STATE of Florida, Appellee.
No. 49345.
Supreme Court of Florida.
February 26, 1981.
Rehearing Denied May 4, 1981.
*1114 Lester Bales, Jr., Zephyrhills, for appellant.
Jim Smith, Atty. Gen., and Charles W. Musgrove, Asst. Atty. Gen., Tallahassee, for appellee.
*1115 ADKINS, Justice.
This is a direct appeal from judgments adjudging defendant guilty of murder in the first degree and sentences of death, resulting from a two count indictment. Our jurisdiction vests under Article V, section 3(b)(1), Florida Constitution (1972).
On the evening of March 4, 1974, at approximately 11:00 p.m., the appellant (Jacobs) and three companions, his wife, Thomas Collins, and Elisha Chavis, went to Ed's Country Store in Pasco County intending to rob the store. En route the entire group consumed an undetermined amount of intoxicating beverages.
Upon arriving at the store, Jacobs and Chavis went inside while Jacobs' wife went to the restroom. Collins remained outside near the car. While the robbery was in progress, the caretaker of the store, Grant Ison, reached into his pocket and Jacobs shot and killed him for fear that Ison had a gun. Seconds afterward, Chavis shot and killed the sole other occupant of the store, Barry Marsh, when Marsh approached Jacobs with a large knife. Jacobs and Chavis then left the store taking with them an unspecified amount of beer, cigarettes, and money, which was later divided among the group.
Approximately eight months after the robbery, Jacobs' wife went to Massachusetts where she gave a statement to Lieutenant Richard Coughlin of the Massachusetts State Police setting forth the details of the offense. This information was transmitted to the Pasco County Sheriff's Department and resulted in the arrest of Jacobs, Chavis, and Collins. An indictment was returned charging Jacobs with the two murders. Jacobs was tried and convicted of first degree murder on both counts. He was sentenced to death on each count.
On this appeal Jacobs raises five points as error.
First, Jacobs argues that it was reversible error for the trial judge to refuse to instruct the jury that intoxication may negate the specific intent required to establish the commission of the crime. In the usual case, to be guilty of first degree murder the defendant must not only intend to kill another human being, but in addition the state must prove that the homicide was perpetrated from a premeditated design. In such case intoxication may make the killer incapable of the reflection called for by the requirement of premeditation. But this case is not the usual case of premeditated murder; this case involves application of the felony murder doctrine.
In cases of felony murder the mental element of the offense is that which is required for the felony; premeditation is supplied by the felony. Adams v. State, 341 So.2d 765 (Fla. 1976). Thus a defendant charged with first degree felony murder on account of a killing during the commission of a robbery may defend himself on the ground that he was too intoxicated to entertain the intent to rob.
Jury instructions regarding intoxication, however, need not be given in every case in which evidence has been adduced at trial that the defendant consumed alcoholic beverages prior to the commission of the offense. Shaw v. State, 228 So.2d 619 (Fla. 2d DCA 1969). There was evidence that Jacobs had used intoxicating beverages, but there was no evidence that Jacobs was intoxicated. There is no evidence as to the amount of alcohol consumed during the several hours Jacobs drove around prior to the robbery.
In this case the record reveals that the trial judge did not commit reversible error in denying the requested jury instructions. The accomplices' testimony shows that the robbery was carried out from a preconceived plan and, until the shooting erupted, it was successful. Also, the evidence clearly shows that defendant was capable of reflection at the time of the homicides and premeditation was thus proved. This being so, the felony murder evidence was merely cumulative to show premeditation.
Jacobs' second point on appeal is that the 180-day speedy trial rule was violated. Jacobs was taken into custody on November *1116 17, 1974. On February 26, 1975, he filed a motion to suppress certain evidence, which was granted on March 17, 1975. On March 18, 1975, the state sought, and the trial court granted, a continuance to take an interlocutory appeal of the suppression order. Fla.R.Crim.P. 3.191. Successive motions for extensions of time were granted to the state by the trial judge, including a June 11, 1975, extension for a reasonable period of time after the appellate court filed its opinion in the interlocutory appeal. The mandate of the appellate court (reversing and remanding the trial court's order granting the motion to suppress) was received by the trial court on November 6, 1975. Jacobs was brought to trial on February 10, 1976.
Jacobs argues that the trial court's initial extension of time was for 60 days and that, because the subsequent extensions were outside the trial court's jurisdiction during the appeal, the speedy trial rule was violated.
Jacobs is in error. A review of the record reveals that the initial extension of time was not limited to a time certain. The extension was for a reasonable time in which the state could expeditiously pursue the interlocutory appeal. The additional extensions of time were effective because only the trial court, not the appellate court, may grant an extension of the speedy trial time period while an interlocutory appeal is pending. State v. Barnett, 366 So.2d 411 (Fla. 1978).
The June 11, 1975, order of the trial court validly extended the time until a reasonable period after the appellate court filed its opinion. As we stated in State v. Jenkins, 389 So.2d 971, 974 (Fla. 1980), "[I]f the trial court grants an extension for the period of the appeal plus `a reasonable period after issuance of the appellate mandate' without specifying the number of days, the time period under rule 3.191(a) is not controlling, and only the constitutional test of reasonableness is applied... ." In the absence of these time limitations, the question of whether a trial date affords defendant a speedy trial must be determined in the light of the circumstances of the particular case as a matter of judicial discretion. The mere lapse of time before trial is not the only factor to be considered under such circumstances. This was the reasoning in State ex rel. Butler v. Cullen, 253 So.2d 861 (Fla. 1971), where defendant sought a continuance. This rule is equally applicable when the state seeks a continuance. See King v. State, 303 So.2d 389 (Fla. 3d DCA 1974).
Jacobs' third point on appeal is that one of the members of the grand jury which indicted him was not a qualified elector on the date the indictment was returned, and the indictment is therefore unlawful. The appellant made a timely motion to dismiss the indictment, which was denied, thereby preserving this point for appeal.
Section 40.01, Florida Statutes (1973), provides inter alia that grand jurors "shall be taken from the male and female persons over age of twenty-one years, ... who are fully qualified electors of the respective counties." (Emphasis supplied). The challenged grand juror, although a qualified elector at the time her name was placed on the jury list, was purged from the voter list prior to Jacobs' indictment. Jacobs argues that the participation of this grand juror voids his indictment, citing the case of Kitrol v. State, 9 Fla. 9 (1860), where a grand juror who was determined not to be qualified because over the age of sixty at the time he was summoned for jury duty, rendered the indictment void.
The applicable statute, section 40.01, Florida Statutes (1973), merely requires that the names placed on the jury list "shall be taken" from the voting list. Johnson v. State, 293 So.2d 71 (Fla. 1974). The statute does not mandate that the grand juror be on the voting list when an indictment is returned. Appellant's third point is therefore without merit. See also Reed v. State, 292 So.2d 7 (Fla. 1974); Jones v. State, 289 So.2d 385 (Fla. 1974).
Jacobs' fourth point on appeal is that the imposition of the death penalty in this case would be a denial of equal protection. The Florida statute inflicting capital *1117 punishment has been held constitutional. Proffitt v. State, 315 So.2d 461 (Fla. 1975), aff'd, Proffitt v. Florida, 482 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Jacobs says, however, that the death penalty is unconstitutionally imposed when a co-defendant on similar facts is not sentenced to death. He cites Slater v. State, 316 So.2d 539 (Fla. 1975), where we held that the imposition of the death penalty against a defendant convicted a first degree felony murder was unconstitutionally applied where the defendant had been an accomplice and the "trigger man", who had entered a plea of guilty, was sentenced to life imprisonment.
We are not confronted with the situation in which the "trigger man" was sentenced to life and the accomplice improperly sentenced to death, Slater v. State, supra, nor are we confronted with the situation where the accomplice is sentenced to life and the "trigger man" properly sentenced to death, Meeks v. State, 339 So.2d 186 (Fla. 1976). Instead, we are confronted with the situation in which there are two "trigger men", one (Chavis), who pleads guilty to second degree murder and is sentenced to life imprisonment, and another (Jacobs), who is convicted of first degree murder in a jury trial and is sentenced to death.
Essentially, appellant's argument is that in case of felony murder involving two "trigger men" it is constitutionally impermissible to allow one "trigger man" to plead guilty and be sentenced to life imprisonment, and allow the second "trigger man" to exercise his right to a jury trial and take his chances that a conviction and death sentence will result. We do not accept appellant's argument. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859, 889, n. 50 (1976).
In a related point, Jacobs argues that the trial judge committed reversible error in denying the defendant the right to inform the jury of the sentences imposed on Jacobs' accomplices. He cites Messer v. State, 330 So.2d 137 (Fla. 1976), where we remanded to the trial court for the purpose of conducting another sentencing hearing because the trial judge had erroneously refused to permit the defendant to inform the jury at the sentencing phase of the sentences imposed on the defendant's accomplices and of certain psychiatric testimony concerning the defendant.
The case sub judice is quite different. Jacobs was precluded from informing the jury of the sentences imposed on his accomplices at closing argument; he made no attempt to present this evidence at the sentencing hearing. Messer stands for the proposition that evidence of the sentences imposed on the defendant's accomplices should not be withheld from the jury at the sentencing phase. § 912.141, Fla. Stat. (1975). Clearly, the jury should be allowed to weigh all the facts and circumstances surrounding the homicide, so that their advisory verdict will be the result of reasoned judgment rather than an exercise in discretion. Raulerson v. State, 358 So.2d 826 (Fla. 1978). But this does not mean that evidence which is admissible at the sentencing hearing is also admissible at trial. Nor does this mean that the state or the trial judge must provide the jury with such information if the defendant fails to do so; generally, it is improper for the state to disclose that another defendant has been convicted. Thomas v. State, 202 So.2d 883 (Fla. 3d DCA 1967). While it is clear that the legislature in the enactment of section 921.141, Florida Statutes (1975), sought to extend the admissibility of evidence at the sentencing hearing, it did not grant the defendant or the state any greater latitude at the trial phase of the bifurcated proceeding.
As for appellant's final point on appeal, we have reviewed the record and determined that it is without merit.
It is our responsibility to review the judgment and sentence imposed upon defendant in light of other decisions and determine whether the punishment is too great. The following findings in aggravation and mitigation were made by the trial court:

*1118 FINDING IN SUPPORT OF DEATH SENTENCE
"On February 13, 1976, a majority of the jury recommended in favor of the death penalty for the Defendant; this Court, after considering the recommendation of the jury, and after weighing the aggravating and mitigating circumstances, as contained in Florida Statute 921.141, sentenced the Defendant to death on each of the two counts as contained in the indictment filed in the above-styled cause and in so doing found as follows:
1. The Defendant committed or aided in the committing of these acts of murder while engaged in the commission of the crime of robbery upon the victims of the murder. The testimony of the three State witnesses, Paula Jacobs, Thomas Collins, and Jean Gray, indicated that the purpose of the Defendant being at the store was to commit a robbery, and that these murders were committed in furtherance of that motive.
2. This capital felony was committed in part for the purpose of avoiding or preventing the arrest or detection of the Defendant for the perpetration of the robbery. The State witness, Jean Gray, testified that the Defendant had made the statement to her that he never left any witnesses and that those that he did leave never "talked." The evidence further disclosed that the participants in the robbery indicated prior to entering the subject store that the witnesses (i.e. ultimate victims) could not be left alive to identify the Defendant Jacobs or others.
3. These acts of murder were committed by the Defendant for pecuniary gain. The testimony of Paula Jacobs and Thomas Collins shows that from the very outset of the sequence of events which led to the deaths of Grant Ison and Barry Marsh, the Defendant and others were together for the sole purpose of committing a larceny.
4. This capital felony was especially heinous, atrocious, and cruel in that the testimony of Paula Jacobs, during the guilt phase of the trial, revealed that the Defendant started to her immediately following the shooting that after he shot the man behind the cash register, his victim begged the Defendant not to shoot again. Paula Jacobs further testified that the Defendant told her that he had started shooting and was not going to stop. Further, the testimony of the medical examiner shows that the man whose body was found behind the cash register had not died instantly, but was, in fact, alive for as much as an hour after he had been shot three times. Testimony of the medical examiner further indicated that the second victim had been shot a total of six times.
The only mitigating circumstances which this Court finds to exist is that the Defendant has no significant history of prior criminal activity. This Court feels that there are no other existing mitigating circumstances; and that, additionally, the evidence as presented during the guilt phase of the trial specifically negates all but the aforementioned mitigating circumstances found in Florida Statute 921.141(6).
WHEREFORE, this Court, upon weighing the aforementioned aggravating and mitigating circumstances, does, therefore, accept the advisory opinion rendered in this cause by the jury of twelve persons and hereby finds that sufficient aggravating circumstances exist and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances.
Finding 1 lists the aggravating circumstance of murder while engaged in the crime of robbery while Finding 3 includes the aggravated circumstance of murder for pecuniary gain. These are overlapping and constitute only one aggravating circumstance. Provence v. State, 337 So.2d 783 (Fla. 1976), was an appeal from a judgment of first degree murder and sentence to death. At the sentencing hearing the jury rendered an advisory verdict recommending life. The trial judge considered as factors in aggravation that there were two armed robbery charges pending against defendant *1119 in another state and that, according to the presentence investigation, defendant was at the time of his arrest engaged in ripping off a heroin addict. We held that the court erred in considering mere arrest and accusation as factors in aggravation. In this opinion we said:
The judge's order does not specifically enumerate which aggravating circumstances under Section 921.141(5), Florida Statutes, induced him to override the jury's recommendation of mercy and to sentence Provence to die. The State argues the existence of two aggravating circumstances that the murder occurred in the commission of the robbery [subsection (d)] and that the crime was committed for pecuniary gain [subsection (f)]. While we would agree that in some cases, such as where a larceny is committed in the course of a rape-murder, subsections (d) and (f) refer to separate analytical concepts and can validly be considered to constitute two circumstances, here, as in all robbery-murders, both subsections refer to the same aspect of the defendant's crime. Consequently, one who commits a capital crime in the course of a robbery will always begin with two aggravating circumstances against him while those who commit such a crime in the course of any other enumerated felony will not be similarly disadvantaged. Mindful that our decision in death penalty cases must result from more than a simple summing of aggravating and mitigating circumstances, State v. Dixon, 283 So.2d 1, 10 (Fla. 1973), we believe that Provence's pecuniary motive at the time of the murder constitutes only one factor which we must consider in this case.
337 So.2d at 786. (Emphasis supplied).
In the case sub judice Finding 1, relating to the robbery, and Finding 3, relating to murder for pecuniary gain, constitute but one aggravating circumstance. In State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), we said:
When one or more of the aggravating circumstances is found, death is presumed to be the proper sentence unless it or they are overridden by one or more of the mitigating circumstances provided in Fla. Statutes, Section 921.141(7), F.S.A. All evidence of mitigating circumstances may be considered by the judge or jury.
It is necessary that the trial judge exercise a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances. The trial judge reasoned that a murder committed for pecuniary gain during the course of a robbery coupled with the heinous manner in which death was inflicted, as well as the circumstance that death was inflicted for the purpose of avoiding detection, required the imposition of a death sentence. The fact that these factual situations were considered as four aggravating circumstances instead of three does not indicate that the technical error committed by the judge in any way affected his reasoned judgment.
The case sub judice involves the listing of one aggravating circumstance in such a manner that the factual situation became two aggravating circumstances. Elledge v. State, 346 So.2d 998 (Fla. 1977), involved an entirely different situation. Defendant Elledge was convicted and sentenced to death for the murder of Strack. The homicide occurred on a Saturday afternoon. On Sunday afternoon defendant Elledge murdered Gaffney. On Monday morning defendant murdered Nelson. The court held that admission of evidence of the Gaffney murder at the sentence hearing was improper because there had been no conviction of the defendant for this homicide. Evidence of the Nelson murder was appropriate because defendant had been convicted of this homicide. This Court reasoned that consideration of the Gaffney homicide could have influenced the judge in his reasoned judgment and therefore, defendant should be granted a new sentencing trial. In the case sub judice the trial court's reasoned judgment in imposing the death sentence could not have been influenced by an inappropriate factual situation. Elledge, supra, is not controlling.
*1120 We have carefully reviewed the record in this case and it is our opinion that the aggravating and mitigating circumstances are such that the infliction of capital punishment is warranted.
Finding no error, it is our opinion that the judgments and sentences should be and they are hereby affirmed.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., and ENGLAND, J., concur in affirmance of the convictions of guilt, but dissent from affirmance of the death sentences. Because of violation of the principles announced in Provence v. State, 337 So.2d 783 (Fla. 1976) and Elledge v. State, 346 So.2d 998 (Fla. 1977), they would remand to the trial judge for resentencing.