449 So.2d 803 (1984)
Theodore Augustus BASSETT, Appellant,
v.
STATE of Florida, Appellee.
No. 58803.
Supreme Court of Florida.
March 8, 1984.
Rehearing Denied May 24, 1984.
*804 Richard R. Cook and Carmen F. Corrente, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Edward M. Chew, Asst. Atty. Gen., Daytona Beach, for appellee.
ALDERMAN, Chief Justice.
Appellant appeals his two convictions of first-degree murder and his sentence of death. We affirm the convictions and death sentence.
On December 12 and 13, 1978, appellant's codefendant, John Cox, directed the Volusia County Sheriff's Department to the skeletal remains of two bodies. Cox confessed to the murders and implicated appellant.
At the time the bodies were discovered, the sheriff's department was holding appellant, apparently on an unrelated felony charge. The state advised the trial court that appellant had relevant information concerning the disappearance of the victims and that appellant was willing to talk to authorities if the court would provide counsel. Because the public defender represented codefendant Cox, the court appointed private counsel to represent appellant during any questioning and negotiations arising from the state's investigation into the victims' deaths. After the investigation was complete, the appointed attorney moved to be discharged, advising the court that he had fulfilled his appointed duties, and stated that the appellant was incarcerated for "a felony charge for which counsel has not been appointed and he will require [further] services of appointed counsel." The appointed attorney further advised the court that he would be out of state and suggested the public defender be appointed. The trial court granted the motion to discharge but did not immediately appoint new counsel.
The investigating officers approached appellant after counsel had withdrawn. They testified that they advised appellant of his Miranda rights and that he then asked to speak with his attorney. The officers informed him that his attorney had withdrawn *805 but that they could contact another one for him. When the officers stood up to leave, appellant responded "Well, what do you want anyway?" The officers told appellant that Cox had implicated him and that they had recovered the bodies. This led to appellant's two-day confession. The officers continually gave appellant Miranda warnings and obtained a signed waiver of rights form each day.
Appellant's confession revealed the following. Appellant met the victims, James Boucher and Daryl Barber, both age eighteen, while walking on Daytona Beach. They had a bag of marijuana with them and were smoking a marijuana cigarette at the time. Appellant told the two boys that he knew of the party they were looking for and offered to take them there. The three drove in the boys' car first to the boys' motel room so one could change clothes, and then to a nearby fast-food restaurant to pick up codefendant Cox. Appellant and Cox schemed to steal the boys' marijuana and any money that they might have. After smoking a few marijuana cigarettes and stopping for gas, either appellant or Cox displayed a gun and directed the boys to drive down an isolated dirt road. After they took the remaining marijuana and the money, Cox determined that the boys would have to be killed to cover up the robbery. Appellant and Cox then marched their victims approximately a mile through an adjacent swamp. At some point, the victims were instructed to discard their shoes, and their hands were tied behind their backs with their belts. Later, Cox told the boys to lie down and both captors beat the victims with a rotten tree limb. Frustrated because the limb kept breaking, Cox knocked one boy in the face with the pistol butt, apparently fracturing his jaw. After the captors decided that the murders could not be accomplished there, Cox returned for the car. The victims were forced into the vehicle's trunk so that no one would see them or hear screams for help. Appellant and Cox then returned to the victims' motel room and removed all belongings to make it appear as if the occupants had checked out. With the boys still in the trunk for what must have been hours, the captors went to Cox's trailer to decide how they would commit the murder. Subsequently, they drove the vehicle down another isolated dirt road. One boy was removed from the trunk and forced to make the second endorsement on his travelers checks. With both victims again secure in the trunk and appellant keeping watch, Cox placed a piece of hose in the vehicle's exhaust pipe and stuffed a sponge around it to ensure against leakage. He forced the opposite end into the trunk. One boy apparently guessed what was happening and attempted to push the hose away. At that, Cox retrieved a knife from the car's interior and poked it into the trunk until the hose was freed. The trunk was then sealed with air conditioning tape and the engine started. Two hours later, the bodies were extricated and dumped into nearby bushes where they remained undiscovered for four months.
After the confession, indictments were returned and new counsel appointed for appellant. Thereafter, both appellant and Cox entered into a stipulation with the state which provided that the only issue in dispute was whether the state could prove corpus delicti sufficiently for the admission of defendants' confessions into evidence. The stipulation provided that if the trial judge found in a pretrial hearing that the corpus delicti could be established, appellant and Cox would enter pleas of nolo contendere to two counts of first-degree murder, conditional upon the trial court imposing concurrent life sentences on each count. The state also agreed to nol-pros all other counts in the indictment. Before the pretrial hearing, appellant withdrew from the stipulation and proceeded to trial. Cox proceeded under the agreement. The trial court found that corpus delicti could be established and, after receiving Cox's nolo plea, sentenced Cox to life imprisonment in accordance with the stipulation's terms.
At appellant's trial, two dentists qualified as experts positively identified the skeletons as their respective former patients, James Boucher and Daryl Barber. *806 The state also presented an expert in forensic anthropology and medical archaeology who testified concerning the reconstruction of the skeletons and of the site where the remains were found. He related that one skeleton had a chip out of the skull frontal bone, a fractured jaw, and a rib broken into two pieces and opined that the injuries occurred at or about the time of death. He also testified that the bodies appeared to have completely decomposed while fully clothed, one lying almost on top of the other, and that they lacked identification, wallets, shoes, and belts. Another expert witness, the medical examiner, testified that in his opinion the victims died from nonsuicidal, nonaccidental, and nonnatural causes, and that the deaths resulted from the criminal act of another. During the course of the trial and outside the presence of the jury, the trial judge held an evidentiary hearing on the admissibility of appellant's confession and expressly found it had been knowingly and voluntarily given. Appellant was convicted as charged, the jury returned a recommendation of death, and the trial court imposed the death sentence.

Trial Phase
Bassett contends that his conviction should be set aside because (1) his statements were taken in violation of his right to counsel; (2) the state did not establish corpus delicti sufficiently to allow the admission into evidence of appellant's confession; (3) corpus delicti was not established beyond a reasonable doubt so to permit appellant's conviction; and (4) the prosecutor made prejudicial remarks in his closing arguments. We reject each of these contentions.
Appellant first contends that the state violated his constitutionally guaranteed right to counsel. Under the facts of the instant case, the investigating officers approached appellant after the trial court had discharged appointed defense counsel and read appellant his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant immediately asked for his attorney. Appellant charges that the mandates of Miranda required questioning to cease at that point and that his ensuing confession was therefore illegally obtained.
We have considered appellant's contention in light of Miranda and in light of the United States Supreme Court decision in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Appellant is correct that once a defendant asks for counsel, questioning must stop under Miranda until counsel is present. "Miranda itself indicated that the assertion of the right to counsel was a significant event and that once exercised by the accused, `the interrogation must cease until an attorney is present.' 384 U.S., at 474, 86 S.Ct. at 1627." 451 U.S. at 485, 101 S.Ct. at 1885. Miranda also provided, however, that a defendant may waive effectuation of his rights, if he does so voluntarily, knowingly, and intelligently. In Edwards, the Supreme Court held that an accused "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S. at 484-85, 101 S.Ct. at 1884-85 (emphasis ours).
In the present case, after appointed counsel had withdrawn, police officers approached appellant and advised him of his rights. When appellant asked for his attorney, the officers informed appellant that his attorney had withdrawn, told him that they would get another for him, and stood up to leave. Appellant then responded "Well, what do you want anyway?" The officers replied that the victims' bodies had been discovered and that codefendant Cox had made a statement implicating him. The officers thereafter gave appellant numerous Miranda warnings prior to and during his confession and obtained two signed waiver of rights forms.
The question we must answer is whether the statement "Well, what do you want anyway?" is a sufficient "initiation" to *807 meet the requirements of Edwards. We hold that it is. The facts are clear that after appellant invoked his right to counsel, the officers were on their feet and moving toward the door. It was appellant at this point who initiated the next exchange which led to the confession.
We have fully considered the appropriateness of the officers' approaching appellant after appointed counsel's withdrawal and have determined that the officers' actions were in accordance with the existing law. The trial court held a full evidentiary hearing on the matter and concluded that appellant knowingly and intelligently waived his rights. The evidence sustains the trial court's finding, and we approve it.
Appellant next contends that his confession was inadmissible because the state failed to establish corpus delicti. We recently reviewed the necessary elements to establish corpus delicti in Stone v. State, 378 So.2d 765 (Fla. 1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980), which reaffirmed our decisions in Frazier v. State, 107 So.2d 16 (Fla. 1958), and Lee v. State, 96 Fla. 59, 117 So. 699 (1928). The necessary elements of proof are: (1) the fact of death, (2) the criminal agency of another person as the cause thereof, and (3) the identity of the victim.
In the present case the state introduced direct and circumstantial evidence apart from appellant's confession, which established: the identity of the victims; the police found the two completely decomposed bodies in a remote area, one on top of the other; one skeleton had a fractured jaw and an injured rib, both of which occurred at or near the time of death; neither body had any identification, shoes, wallets, or belts; and, each victim had a stable state of mind before death. Additionally, the medical examiner rendered an expert opinion that within a reasonable medical certainty, the victims died as the result of another's criminal act. To admit a confession, Frazier v. State requires that there be independent proof of the corpus delicti, "but it is enough if the evidence tends to show that the crime was committed." 107 So.2d at 26. Proof beyond a reasonable doubt is not mandatory. Accord, Stone v. State. We reject appellant's argument and conclude that the independent evidence was more than adequate under any standard to establish the three elements of corpus delicti under the required quantum of proof for the introduction of a confession.
Appellant's third point is closely akin to his second. Here appellant argues that, for purposes of his conviction, the state introduced insufficient evidence to prove corpus delicti beyond a reasonable doubt, and, accordingly, the trial court should have granted a directed verdict. Specifically, appellant charges that the only evidence introduced to prove death by the criminal agency of another was his confession; and that, standing alone, a confession is not sufficient to prove criminal agency. This argument fails for the similar reason that appellant's second contention did not succeed: there was substantial other evidence available from which a jury could conclude that each element of the corpus delicti was present.
Appellant's final point concerns the prosecutor's closing remarks in the trial's guilt phase. The record discloses that defense counsel made no objection to these remarks at trial. The remarks do not constitute fundamental error, and we will not consider them for the first time on appeal. See Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); Castor v. State, 365 So.2d 701 (Fla. 1978); Douglas v. State, 328 So.2d 18 (Fla.), cert. denied, 429 U.S. 871, 97 S.Ct. 185, 50 L.Ed.2d 151 (1976).

Sentencing Phase
In imposing the death sentence, the trial court found four statutory aggravating circumstances: (1) that appellant created a great risk of death to many persons; (2) appellant committed the murders while engaged in robbery and kidnapping; (3) appellant committed the murders to avoid lawful arrest; and (4) the murders were *808 especially heinous, atrocious, and cruel. The trial court found appellant's age of eighteen at the time of the offense to be somewhat of a mitigating factor.
Appellant challenges his death sentence on the basis that he was deprived of a fair sentencing hearing due to several comments made by the prosecution during closing argument at the sentencing hearing. Because he did not object to any of these prosecutorial comments during trial, appellant is precluded from raising them on appeal. Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981). Even if appellant had properly preserved this point for appeal, we would not find reversible error. The comments read in the entire context of the closing argument do not constitute prejudicial error.
Appellant also argues that the death sentence is not supported by sufficient evidence. He concedes that three of the four aggravating circumstances were proven beyond a reasonable doubt, but asserts that the court erroneously found that appellant created a great risk of death to many persons. He also contends that the court erred in not finding as a mitigating factor that he had no significant history of prior criminal activity.
The state concedes and we find that the trial court erroneously found that appellant created a great risk of death to many persons. The remaining three aggravating circumstances were proven beyond a reasonable doubt. We further hold that the court did not err in finding that defendant has a significant history of prior criminal activity. The record amply supports this finding.
Although one improper aggravating factor went into the weighing process, and the trial court found appellant's age as somewhat of a mitigating factor, here, as in Brown v. State, 381 So.2d 690 (Fla. 1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981), "we can know" that the result of the weighing process would not have been different had the one impermissible factor not been considered. Here, the trial court has told us in its order that appellant's age, in its view, had only minor significance. As in Brown and Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979), there are ample other statutory aggravating circumstances to convince us that the weighing process has not been compromised. In Brown, we stated, "Given the imprecision of the criteria set forth in our capital punishment statute we must test for reasoned judgment in the sentencing process rather than a mechanical tabulation to arrive at a net sum. Hargrave v. State, supra; State v. Dixon, 283 So.2d 1 (Fla. 1973)." 381 So.2d at 696 (footnote omitted). See also Vaught v. State, 410 So.2d 147 (Fla. 1982).
Although appellant has not raised as a point on appeal the fact that his accomplice entered a nolo plea and received a life sentence, we have considered this factor in the context of the present case. We do not find, however, that this constitutes a basis for reversal of his death sentence.
What happens to a codefendant is relevant and may be considered by a judge and jury in determining the appropriate sentence. Salvatore v. State, 366 So.2d 745 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). In the present case, the sentence of the codefendant was considered. The judge and jury knew exactly what sentence the accomplice had received and why he had received this sentence. Even with this information, the jury recommended and the trial court imposed the death sentence. They reached this result because the death sentence in this case is clearly appropriate regardless of what happened to the codefendant. Because the state accepts a nolo plea from the equally guilty accomplice does not mean that as a matter of law, the appellant could not receive the death sentence. If this were true, then the appellant had nothing to lose by going to trial. He could require the *809 state to prove his guilt, and he would be assured that if convicted he could not be sentenced to death.
In Jacobs v. State, 396 So.2d 1113 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981), the defendant contended that the death penalty is unconstitutionally imposed when a codefendant on similar facts is not sentenced to death. In that case, there were two "trigger men," one who plead guilty to second-degree murder and was sentenced to life imprisonment, and another (Jacobs) who was convicted of first-degree murder in a jury trial and was sentenced to death. In rejecting Jacobs' contention, we held:
Essentially, appellant's argument is that in case of felony murder involving two "trigger men" it is constitutionally impermissible to allow one "trigger man" to plead guilty and be sentenced to life imprisonment, and allow the second "trigger man" to exercise his right to a jury trial and take his chances that a conviction and death sentence will result. We do not accept appellant's argument. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859, 889, n. 50 (1976).
396 So.2d at 1117.
Having reviewed the entire record, we find that the trial court properly imposed the sentence of death.
Accordingly, we affirm the convictions and sentence of death.
It is so ordered.
ADKINS, BOYD and EHRLICH, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion, in which McDONALD, J., concurs.
OVERTON, Justice, concurring in part and dissenting in part.
I concur with the conviction but dissent from the sentence because, under the circumstances of this case, the imposition of the death penalty is contrary to Florida law and unconstitutional. The majority opinion has totally ignored appellant's assertion that the state improperly presented to the jury, as an aggravating circumstance to justify the imposition of the death penalty, the fact of appellant's exercise of his constitutional right to a jury trial.
Without question, the record in this case supports the conclusion that there were three aggravating circumstances and one mitigating circumstance. It is my view that, absent the state's introduction of an improper non-statutory aggravating circumstance, the death sentence would have been appropriate.
The appellant and his accomplice appear to have participated equally in the murders, the only distinguishing factor being that Cox entered a nolo plea conditioned upon his being able to receive a life sentence while the appellant went to a jury trial. In fact, the record not only supports this conclusion but could well support a conclusion that Cox was in fact the dominant figure in committing these heinous murders. The state apparently recognized this because it did not attempt to argue that the appellant deserved death because he was the more dominant person in the commission of this offense. Rather, the state asserted that the appellant should receive the death penalty because he exercised his right to a jury trial. Without question, the state placed the appellant's exercise of his right to a jury trial before the jury as a critical aggravating factor. The record clearly supports this conclusion. During the sentencing phase of the appellant's trial, the defense counsel called the prosecutor as a witness to establish the codefendant's plea bargain for a life sentence. After testifying on direct examination, the prosecutor cross-examined himself and explained to the jury why the appellant should receive the death penalty even though his codefendant received only a life sentence:
I felt  early in the prosecution I felt that it was a death penalty case, but I was going to give them the benefit of the doubt at that point if they wanted to admit their guilt, plead guilty  plead *810 guilty  it would be some type of indication of a rehabilitation on their part.
I wanted to spare the family the burden of coming here to this courtroom and going through the ordeal of sitting through a murder trial in which their sons' bones would be exposed; they would have to hear the gruesome testimony, relive their entire life until this point.
And I wanted to try to put it behind the family, wanted to try to save the State the expense.
But the [appellant] said he wanted to challenge the Court; he wanted to challenge the evidence.
So he has that.
He knew that when he withdrew that he would face this Jury, face the parents, and put them through the ordeal the entire time.
Their bodies could not be released. Their bodies would be held pending all this.
He chose that option.
It is clear that this evidence was presented as a non-statutory aggravating factor in the sentencing phase of the trial. This Court has emphatically held that "[u]nder the provisions of Section 921.141, Florida Statutes, aggravating circumstances enumerated in the statute must be found to exist before a death sentence may be imposed. The specified statutory circumstances are exclusive; no others may be used for that purpose." Purdy v. State, 343 So.2d 4, 6 (Fla.), cert. denied, 434 U.S. 847, 98 S.Ct. 153, 54 L.Ed.2d 114 (1977) (emphasis added). See also McCampbell v. State, 421 So.2d 1072 (Fla. 1982); Miller v. State, 373 So.2d 882 (Fla. 1979).
I recognize that the United States Supreme Court has said in Barclay v. Florida, ___ U.S. ___, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), that the federal constitution does not prohibit consideration at the sentencing phase of information not directly related to statutory aggravating factors and that our rule that statutory aggravating factors must be exclusive affords greater protection than the federal constitution requires. That holding by the United States Supreme Court is qualified by the phrase "as long as that information is relevant to the character of the defendant or the circumstances of the crime." Id. at 3433 (Stevens, J., concurring). The majority has totally ignored the fact that the defendant's exercise of his right to a jury trial has nothing to do with the character of the defendant or the circumstances of the crime. There is no way the majority can justify the use of this factor as an aggravating circumstance. The majority attempts to rely on Jacobs v. State, 396 So.2d 1113 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981), which is clearly inapplicable to the circumstances in this case. In Jacobs, no attempt was made by the state to assert that the jury should consider what the defendant required the families of the victims to experience by exercising his right to a jury trial. In addition, Jacobs failed to present any evidence to the jury concerning the sentences imposed on his accomplices. Consequently, the jury did not know what sentence was imposed on the accomplice and no issue was presented as to who was the dominant individual in that crime. It was recognized in Jacobs that evidence of the sentence imposed on a codefendant should be admitted if properly presented at the sentencing phase. We went on to state that this holding did not mean that "the state or the trial judge must provide the jury with such information if the defendant fails to do so; generally, it is improper for the state to disclose that another defendant has been convicted." 396 So.2d at 1117. That was the heart of the holding in Jacobs on that issue. This Court expressly rejected Jacobs' argument that he was prejudiced by his attorney's being precluded from informing the jury at closing argument of sentences imposed on his accomplices when evidence of the sentences had not been presented to the jury. That case decided a different issue and clearly does not control the issue presented in the instant case.
*811 I conclude that in the instant case there was an improper, prejudicial use of a non-statutory aggravating circumstance contrary to Florida law. Purdy; McCampbell; Miller. Further, I find a clear violation under the sixth and fourteenth amendments to the United States Constitution in allowing the jury to consider, as a critical aggravating factor in the sentencing phase of this trial, the appellant's exercise of his constitutional due process right to a jury trial.
McDONALD, J., concurs.