United States Court of Appeals,

Eleventh Circuit.

No. 95-2519.

Theodore Augustus BASSETT, Jr., Petitioner-Appellant,

v.

Harry K. SINGLETARY, Jr., Secretary, Florida Department of Corrections, Respondent-Appellee.

Feb. 20, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 92-215-Civ-Orl-18), G. Kendall Sharp, Jr., Judge.

Before HATCHETT, Chief Judge, DUBINA, Circuit Judge, and COHILL[*], Senior District Judge.

PER CURIAM:

This case is an appeal by Theodore Augustus Bassett Jr. ("Bassett") from the denial by the district court of his Petition for Writ of Habeas Corpus. The case had been referred to a United States Magistrate Judge who recommended that the Writ be granted, but the district court rejected that recommendation and denied the Writ.

Bassett was convicted of two counts of first degree murder on January 17, 1980, and sentenced to death on both counts. The convictions and sentences were affirmed by the Florida Supreme Court. *Bassett v. State,* 449 So.2d 803 (Fla.1984). The Florida Supreme Court subsequently vacated the death sentences and ordered a new penalty phase. *Bassett v. State,* 541 So.2d 596 (Fla.1989). He was sentenced to consecutive life sentences on November 17,

[*]Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1989.

The basis for the present petition is the denial of Bassett's Motion to Suppress his confession at his original trial.

During the investigation of the two murders, the court appointed private counsel to represent Bassett because his co-defendant was already represented by the public defender's office. At the time, Bassett was incarcerated on an unrelated felony charge. At the conclusion of the investigation, Bassett's counsel moved to withdraw since he would be leaving the area. The court granted the motion but did not immediately appoint new counsel. Bassett was not informed of his counsel's withdrawal.

The investigating officers approached Bassett in jail after his counsel had withdrawn. They advised Bassett of his Miranda rights, and he then asked to speak with his attorney. The officers told him his attorney had withdrawn, but they stated that they would contact another attorney for him. When the officers stood up to leave, Bassett said, "[w]ell, what do you want anyway?" The officers then told Bassett that they had discovered the bodies of the two victims and that Bassett's co-defendant had implicated him. This statement led to a two day confession. The officers continually gave Bassett Miranda warnings and obtained a signed waiver of rights form each day.[1]

Bassett asserts that the use of his confession at trial

---

[1] This factual account is based on the opinion of the Supreme Court of Florida in affirming the denial of Bassett's Motion to Suppress his confession. The Supreme Court accepted the factual findings of the trial court. *Bassett,* 449 So.2d at 804-05. A trial court's factual findings are entitled to a presumption of correctness under 28 U.S.C. § 2254(d).

violated his rights under the Fifth, Sixth and Fourteenth Amendments. We look to the United States Supreme Court for guidance in deciding this issue.

In *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981), the United States Supreme Court held that, once an accused has invoked his right to counsel, a valid waiver of that right cannot be established by showing only that he responded to a later police initiated interrogation after again being advised of his rights. An accused may not be subjected to further interrogation until counsel has been made available to him, unless the accused himself has initiated further communications with the police. Essentially, the Court held that a waiver of the right to counsel must not only be voluntary but must constitute a knowing and intelligent relinquishment of a known right or privilege. The Court stated that "[h]ad Edwards initiated the meeting [with police officers after having invoked his right to counsel], nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary statements and using them against him at the trial." 451 U.S. at 485, 101 S.Ct. at 1885.

The situation we have here falls somewhat short of the scenario described by the Court in *Edwards,* where the police initiated the interrogation and the defendant made the incriminating statement. Here, the police initiated an interrogation of Bassett, but then started to leave when he chose to exercise his right to counsel. As the police began to leave, Bassett initiated further conversation by inquiring "well, what do

you want, anyway?"  Thus, the police appropriately terminated their interrogation when Bassett invoked his right to counsel.  Bassett himself initiated further conversation by his inquiry.

In *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the Court refined *Edwards.*  There, the Court held that in a custodial interrogation where the accused requests counsel, interrogation must cease, and the police may not reinstate interrogation without counsel being *present.*  If *Minnick* applied to this case, it would cast doubt on the reopening of the interrogation without the presence of counsel.  The district court, however, in rejecting the recommendation of the magistrate judge, held that *Minnick* announced a new rule of law and could not be applied to this case on collateral review.  Thus, we must decide as a threshold issue whether the *Minnick* decision, which was rendered after Bassett's conviction, applies here.

To address that issue, we consider the Court's holding in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).  There, the Court set out the criteria for determining whether a decision could apply retroactively, or whether it was a "new rule" with only prospective applicability.  Under *Teague,* a new rule of constitutional law may not be applied on collateral review.  489 U.S. at 310, 109 S.Ct. at 1075.  In other words, only a rule that is "not new" may be applied retroactively to a conviction that was final when the rule became law.  This "new rule" principle "validates reasonable, good-faith interpretations of existing precedent made by state courts even though they are shown to be contrary to later decisions."  *Butler v. McKellar,* 494

U.S. 407, 414, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990).

*Teague* provides two exceptions:

(1) if the effect of the new rule is to remove a category of conduct from the reach of the criminal law or to remove a class of defendants outside the scope of a particular punishment; and (2) if the new rule requires procedures that are implicit to the concept of ordered liberty and "enhance the accuracy of the fact finding process at trial in such a way that without them the likelihood of an accurate conviction is seriously diminished.'

489 U.S. at 311, 109 S.Ct. at 1077; *See also Butler,* 494 U.S. at 415-416, 110 S.Ct. at 1217-1218. Only if a case falls into one of these two exceptions may a new rule be applied retroactively.

A rule is new if it imposes a new obligation on the government, or if it breaks new ground and was not compelled by existing precedent. *Penry v. Lynaugh,* 492 U.S. 302, 314, 109 S.Ct. 2934, 2944, 106 L.Ed.2d 256 (1989). Put differently, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070).

In determining whether or not a rule is new, the Supreme Court focuses on the underlying rationale of the writ. "The relevant frame of reference ... is not the purpose of the new rule whose benefit the [defendant] seeks, but instead the purposes for which the writ of habeas corpus is made available." *Teague,* 489 U.S. at 306, 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 682, 91 S.Ct. 1171, 1175, 28 L.Ed.2d 388 (1971)). A rule is not new (and thus may be applied retroactively) only if the underlying rationale of the rule advances the purposes of the writ. This purpose is to assure that a defendant in a criminal trial was afforded all constitutional guarantees that were in effect when the

conviction became final, and not to guarantee the protection of rights that were later announced. *Butler v. McKellar,* 494 U.S. at 413, 110 S.Ct. at 1216-17 (quoting *Teague,* 489 U.S. at 306, 109 S.Ct. at 1073). The rationale here is finality: "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Teague,* 489 U.S. at 309, 109 S.Ct. at 1074.

The Appellee cites *Greenawalt v. Ricketts,* 943 F.2d 1020 (9th Cir.1991), which holds *Minnick* to be a new rule of law. We agree. Also instructive is *Arizona v. Roberson,* a case in which the Court subsequently held that an interpretation of *Edwards* stated a new rule. 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). In *Roberson,* the Supreme Court held that, where a suspect has invoked his right to counsel and conferred with counsel, *Edwards* bars police-initiated interrogation about a separate crime. 486 U.S. at 682-83, 108 S.Ct. at 2098-99. The facts here show that, while Bassett was incarcerated for a different crime, the police initiated questioning regarding their murder investigation. After he had already requested an attorney, and the police began to leave, Bassett asked the question which led to further interrogation during which he confessed.

In *Butler,* the Supreme Court held that *Roberson* stated a new rule that was not a logical extension of *Edwards.* 494 U.S. at 416, 110 S.Ct. at 1218. The Court stated that its holding in *Roberson* placed added restrictions on the ability of the police to conduct investigations. *Id.* The Court's analysis in *Butler* applies

equally to the facts of *Minnick.*

We hold that *Minnick* enunciates a new rule and is not retroactive. Bassett's conviction became final before the*Minnick* opinion was handed down in 1990. Therefore, it does not affect our analysis in this case. We find that, under the rule announced in the *Edwards* case, Bassett's rights were not violated. Consequently, we will affirm the district court.

AFFIRMED.