396 So.2d 222 (1981)
Mark HERMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1104.
District Court of Appeal of Florida, Fourth District.
March 25, 1981.
*225 Geoffrey C. Fleck and Alfonso C. Sepe, Miami, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Paul H. Zacks, Asst. Atty. Gen., West Palm Beach, for appellee.
COBB, WARREN H., Associate Judge.
The defendant, Mark Herman, was convicted of the first degree murder of Richard George Kreusler, and sentenced to life imprisonment. On appeal, he raises ten separate points. We affirm for the reasons hereinafter set forth, and for that reason the cross-appeal by the state is moot.
The trial evidence revealed that Kreusler was fatally injured by two or three shotgun blasts as he answered his doorbell on the evening of January 16, 1976, in Palm Beach County, Florida. There were no witnesses to the crime. Several neighbors testified to seeing a small yellow or orange car with a black top in the area near the time of the shooting. The police recovered two discharged 12-gauge "double aught" shotgun shell casings outside the Kreusler home, and three shotgun shell wads. No other physical evidence was found at the scene of the crime. Ballistic tests and other evidence[1] indicated these shell casings had been fired by a pump-style shotgun.
The defendant, who was not then a suspect, was questioned in May, 1976, about the Kreusler homicide and told officers that a shotgun he had received and subsequently returned to a third party was a 20-gauge double-barrelled shotgun. Subsequently, in August, the police came into possession of a sworn statement from one Ronald Gates, a fugitive facing state robbery charges and federal extortion charges. As a result of that statement, Herman became a suspect in the Kreusler homicide. Based on information in the statement, the police ascertained that a shipment of the defendant's goods were in a warehouse in Tempe, Arizona. A search warrant was obtained and a 12-gauge pump shotgun was seized, together with various shotgun shell casings, none of which was "double aught." Subsequent ballistic tests in regard to this weapon were "inconclusive."
In November, 1976, Herman was convicted of unrelated crimes in state criminal court. He was incarcerated in the Palm Beach County Jail between then and the following January, awaiting sentencing. In December, one Dexter Drake Coffin, III, a twice-convicted felon, produced a confession to the Kreusler homicide, allegedly authored by the defendant. Coffin and Herman had been incarcerated together in the same jail, but in separate cells. Coffin, a "jailhouse lawyer," purportedly was advising Herman on the procedures of an insanity defense to preclude the imminent sentencing. The note explained the Kreusler homicide as a case of mistaken identity, the *226 idea being to shoot a neighbor of Kreusler's, Billy Glocker, who had cheated Herman in a drug deal. Herman, intoxicated by the effects of morphine and delaudid, mistakenly went to the wrong house, according to the note. A fingerprint analysis of the note confirmed the prints of Coffin and an alleged jail intermediary, Kane, on the document, but none from the defendant. Coffin used his delivery of the confession to the state attorney as a basis for a motion to mitigate the sentence he was serving. Testimony was adduced at trial from two other inmates concerning inculpatory verbal statements made by the defendant in the jail.
We consider appellant's ten points on appeal seriatim:

POINT I
Appellant moved for a new trial below on the ground that the state, in violation of the Brady rule,[2] failed to disclose promises made to a state witness, Gerard DeNono. The record reveals this point to be frivolous. No deal was made with DeNono by the state that required disclosure. The fact that DeNono was hoping for leniency as a result of his testimony was not a deal requiring disclosure. DeNono's counsel had been advised by the assistant state attorney in regard to the law of Florida concerning the doctrine of use immunity  i.e., that DeNono's testimony in the Herman trial could not be used against DeNono in his forthcoming first degree murder trial  and the prosecutor had stated that, if subpoenaed to testify at DeNono's sentencing procedure, he would tell the sentencing judge of the fact that DeNono had cooperated in the Herman case.
An explanation of a point of law to defense counsel and a representation to tell the truth in response to a subpoena are not "promises" to a witness by a state that compel disclosure. Cf. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

POINT II
The appellant contends that the indictment against him was fatally tainted by the participation of a grand juror, Teresita Herron, who was married to Major Robert G. Herron, head of the detective bureau within the Palm Beach County Sheriff's Office, which investigated the Kreusler homicide. The question appellant seeks to raise is whether or not section 905.04(1)(b), Florida Statutes (1977), disqualified[3] Mrs. Herron from grand jury duty because of her interest in the subject matter: the homicide her husband had investigated.
In support of this argument, the appellant relies on Cawthon v. State, 115 Fla. 801, 156 So. 129 (1934). In that case, the Florida Supreme Court held that a statute providing that neither a sheriff nor deputy sheriff could be qualified as jurors applied to a commissioned deputy sheriff of Santa Rosa County who had accepted his commission, but had not given bond nor exercised the duties of a deputy sheriff at the time he served as a grand juror. That case is clearly distinguishable from the instant situation.
The state argues that the challenge to Mrs. Herron as a grand juror came too late, because it was after the jury was impanelled. See section 905.05, Florida Statutes (1977). The state maintains that the appellant presented no proof to the trial court that he came within the statutory exception regarding persons ignorant of the prospective grand jury investigation and, therefore, the motions challenging Mrs. Herron were untimely and properly denied. Seay v. *227 State, 286 So.2d 532 (Fla. 1974), cert. denied, Seay v. Florida, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974); Whitney v. State, 132 So.2d 599 (Fla. 1961).
The state further argues that the hearing evidence did not meet the burden of proving that Mrs. Herron had a state of mind which would have prevented her from acting impartially and without prejudice to Herman's substantial rights. At the hearing on appellant's motion to disqualify Mrs. Herron, both she and Major Herron testified. He stated that he never discussed his work with his wife, and that he himself did not have any part in the investigation of the Kreusler case; Mrs. Herron disavowed any communication with her husband in regard to the case, and swore that she was impartial and unprejudiced. No evidence to the contrary was adduced, and the trial court denied the challenge.
We believe the record reveals that the appellant raised the challenge to Mrs. Herron in timely fashion, and that the trial court considered the motion on the merits, rather than dismissing it as untimely. Moreover, the state's objection to the timeliness of the challenge was not made to the trial court, which entertained and decided the motion on its merits. The state cannot raise timeliness for the first time on appeal. See State v. Giardino, 363 So.2d 201 (Fla. 3d DCA 1978).
On the merits, however, we find no evidentiary basis, other than the inferences available from the fact of the marital relationship itself, to support a finding that Mrs. Herron had a state of mind which prevented her from acting impartially. No specific statutory basis existed to disqualify her. The burden to show the basis for discharge at the hearing was on the movant. See State v. Demetree, 213 So.2d 709 (Fla. 1968). The presumption is that a grand juror is qualified and exercises sound judgment. Clemmons v. State, 141 So.2d 749 (Fla. 1st DCA 1962), modified, 150 So.2d 231 (Fla. 1963). There is not a sufficient basis before this court to overturn the trial court's denial of the challenge to Mrs. Herron.

POINT III
The appellant asserts he was prejudiced in trial preparation by the denial of his motion for a continuance. The motion was made on the day trial was set to commence (it had been scheduled for six months), and following more than six months of discovery. The trial court systematically determined that the defendant would have the opportunity to at least depose each state witness prior to his or her testimony. Open file discovery had been afforded the defendant. Under these circumstances, we cannot find that the trial court violated its broad discretion in matters of requested continuances. See Mobley v. State, 327 So.2d 900 (Fla. 3d DCA 1976), cert. denied, 341 So.2d 292 (Fla. 1976).

POINT IV
The appellant urges that the trial court erroneously denied his motion to suppress the shotgun seized in the warehouse in Tempe, Arizona, because of the insufficiency of the affidavit upon which the search warrant issued.
The state responds, inter alia, that the defendant lacked standing to raise this issue because he did not have a legitimate expectation of privacy in the invaded place. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. Rakas, 99 S.Ct. at 423-424, n. 1. The defendant was placed on notice of this burden when the state raised the issue of standing before the trial court. The hearing evidence in the instant case shows that the affiant, Officer Harry Hawkins of the Phoenix Police Department, after receiving information relayed to him by Palm Beach authorities, called personnel of the Bekins Moving & Storage Company, with warehouse *228 facilities in Tempe, and, through company invoice records, ascertained the various items which Herman had shipped to Arizona, including the shotgun.
In United States v. Novella, 519 F.2d 1078 (5th Cir.1975), cert. denied, 423 U.S. 1060, 96 S.Ct. 797, 46 L.Ed.2d 651 (1976), it was held that a defendant who stored marijuana in a rental warehouse, knowing workmen and other tenants had access to the area, had no reasonable expectation of privacy with respect thereto.
In United States v. Garcia-Rodriguez, 558 F.2d 956 (9th Cir.1977), cert. denied, 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 802 (1978), it was held that lessees of a warehouse had no reasonable expectation of privacy where they knew that access by the public was unrestricted and gates and doors were left open and unguarded.
The recent United States Supreme Court case of United States v. Salvucci overruled Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the "automatic standing" case, and held that defendants charged with crimes of possession may only claim the benefit of the exclusionary rule if their own Fourth Amendment rights have, in fact, been violated. In determining this, "it must be asked not merely whether the defendant has a possessory interest in the items seized, but also whether he had an expectation of privacy in the area searched." Salvucci, 100 S.Ct. at 2552-2553.
Given the evidence adduced at the hearing before the trial court, it does not appear that the defendant met his burden of establishing a reasonable expectation of privacy in respect to the warehouse storage facilities in Tempe, and we therefore approve the denial by the trial court of the motion to suppress the shotgun on the basis of the Fourth Amendment argument presented to it.

POINT V
The next point urged by appellant is that the trial court erred in excluding certain jurors for cause because of their expressed opposition to the death penalty. Since no death sentence was imposed in this case, the appellant lacks standing to raise this issue on appeal. A "death-oriented" jury is not, ipso facto, a "guilt-oriented" jury. Cf. Witherspoon v. Illinois, 391 U.S. 510, 517-518, 88 S.Ct. 1770, 1774-1775, 20 L.Ed.2d 776 (1968). Even if this point were properly before us, the record clearly shows that there was timely objection by the defense to the excusal by the court of only three such jurors: Mrs. Wyman, Mr. Silberberg, and Mr. Ford. See Brown v. State, 381 So.2d 690 (Fla. 1980).
Prospective jurors Wyman, Silberberg and Ford, on voir dire, stated that they could not vote to impose the death penalty under any circumstances. This constitutes grounds for challenge for cause. In Brown, the Florida Supreme Court stated:
We have recently held that a prospective juror may be excused for cause if it is shown that he "would vote against death regardless of the facts presented or the instructions given." Jackson v. State, 366 So.2d 752, 755 (Fla. 1978). We have also upheld the exclusion of a prospective juror who said that he "wouldn't know" if he could find the defendant guilty where it might result in capital punishment. Williams v. State, 228 So.2d 377, 381 (Fla. 1969), vacated on other grounds, 408 U.S. 941, 92 S.Ct. 2864, 33 L.Ed.2d 765 (1972).
381 So.2d at 694.
The appellant also objected to any questions to jurors concerning the death penalty because section 921.141, Florida Statutes (1977) provides for the possibility of empanelling a separate advisory jury. This point was decided adversely to appellant's position in Riley v. State, 366 So.2d 19 (Fla. 1978).

POINT VI
As the sixth point, appellant argues that the trial court erred in admitting defendant's shotgun into evidence on the grounds that the state failed to establish the requisite predicate for admission and *229 that the admission was prejudicial and requires a new trial. During argument on the admission of the shotgun, the prosecutor stated:
Your Honor, if Agent Bollenbach were permitted to give his opinion not to a reasonable scientific certainty, but if he were permitted to guess at whether or not it was the weapon, his guess would be that he thinks it probably isn't. There are characteristics which he cannot explain which do differ.
However, he will state that he cannot conclude that that weapon, that there could have been modifications made in that weapon which account for the discrepancies that he notes. (emphasis added).
The F.B.I. expert's actual testimony was that he could not conclude to a reasonable scientific certainty one way or another whether the shells were fired from the weapon admitted into evidence. There was also testimony at trial by a police officer that during the investigation he told Mark Herman that he was interested in a 12-gauge shotgun and that Herman was very nervous, which was out of character. And according to state's witness DeNono, defendant told him at first that the shotgun the sheriffs were looking for was deepsixed; "later he told me that they're running around looking for a shotgun and they got the damn thing in their possession."[4]
There is no issue concerning admissibility of the testimony that Herman owned a shotgun. This testimony was relevant and admissible. In regard to admission of the shotgun itself, if the expert had simply testified, as he did, that he could not say one way or the other, then the admission of the shotgun would clearly have been proper. See Harris v. State, 129 Fla. 733, 177 So. 187, 190 (1937). Appellant's shotgun was of the same caliber as the shell casings found at the scene of the murder. The matching caliber was a circumstance of some probative value. Williams v. State, 73 Fla. 1198, 75 So. 785 (1917); United States v. Gandolfo, 577 F.2d 955 (5th Cir.1978), cert. denied, 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); United States v. Robinson, 560 F.2d 507, 509 (2d Cir.1977), cert. denied, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). The expert's testimony that he could not say one way or the other whether the shotgun admitted was the murder weapon, was not conclusive or binding on the jury which was free to determine credibility and weight to be ascribed. See Trolinger v. State, 300 So.2d 310 (Fla. 2d DCA 1974), cert. denied, 310 So.2d 740 (Fla. 1975). Under those circumstances, the jury would be entitled to consider the shotgun and give whatever weight was due in light of the expert's testimony. See Smith v. State, 235 Ga. 620, 221 S.E.2d 41 (1975); State v. Hatton, 95 Idaho 856, 522 P.2d 64 (1974).
But in considering the admissibility of the shotgun, the trial court was faced with the state's representation that the expert would testify, if he had to guess, that it was not the same gun. Bound by that representation, the trial court's decision to admit the shotgun into evidence was a closer question. See Coco v. State, 80 So.2d 346 (Fla. 1955), cert. denied, 349 U.S. 931, 75 S.Ct. 774, 99 L.Ed. 1261, and 350 U.S. 828, 76 S.Ct. 57, 100 L.Ed. 739 (1955). However, assuming arguendo that there was error, we hold admission of the shotgun was harmless because proof of appellant's ownership of a shotgun was not prejudicial. It is not illegal to own a shotgun. There are no adverse connotations, such as there might be in the case of ownership of a Saturday night special or a zip gun, which would give rise to prejudicial inferences on the part of the jury. There being no reasonable basis upon which a different verdict could have been reached, if admission of the shotgun was error, it was harmless. See Russell v. State, 270 So.2d 462 (Fla. 3d DCA 1972); § 924.33, Fla. Stat. (1979).

*230 POINT VII
The issue here presented is the propriety of the denial by the trial court of a motion for mistrial occasioned by a state witness' offer, during cross-examination, to take a polygraph test. During a heated cross-examination of the state's witness, DeNono, the latter volunteered to take a polygraph test, and was immediately told by defense counsel that he couldn't pass one if given eighty such tests.
Appellant attempts to equate this comment with those cases involving the improper revelation to juries of the result of previously given polygraph tests. Those cases are not analogous. The statement herein amounted to no more than DeNono's assertion that he was telling the truth, which the jury was free to evaluate for itself. This point on appeal is without merit. Cf. Sullivan v. State, 303 So.2d 632 (Fla. 1974), cert. denied, 428 U.S. 911, 96 S.Ct. 3226, 49 L.Ed.2d 1220 (1976).

POINT VIII
The appellant contends the prosecutor failed to disclose, contrary to the Brady rule, an exculpatory statement given by a prospective state witness, James Murray. The appellant concedes that he had been apprised, prior to trial, that Murray had given an evidentiary statement favorable to the defendant, although he did not have the specific statement given.
Prior to trial, Murray was listed by both the state and the defense as a witness. The appellant contends that the state had in its possession a tape recorded sworn statement from Murray to the effect that an automobile owned by one Steve Laiser, a friend of Herman's, which was similar in appearance to the vehicle seen on the night of the homicide, was inoperable at the time of the homicide. Evidence was given at trial by other witnesses in regard to the existence of this automobile, and its similarity to the description given by the witnesses. The evidence adduced at the hearing on appellant's motion for new trial was contradictory as to a number of tapes taken from the witness, Murray. It was brought out that the state, after Murray was listed as a defense witness, took Murray's statement to find out what defense evidence he had. In that statement, Murray first told the police that the Laiser vehicle was not operable at the time of the Kreusler homicide, based on business records that Murray had; subsequently, in response to a subpoena duces tecum, Murray could not produce such records and modified his earlier statement to the effect that he was uncertain as to whether or not the Laiser vehicle was operable at the time of the homicide. Murray also swore that he had previously given his information to the defense, or at least the investigator for the defense. After the state interview ascertaining that Murray had no records or testimony one way or the other concerning the operability of the Laiser vehicle at the time of the homicide, the state removed Murray from the state witness list on the basis that he had no relevant information helpful to either the state or the defendant. The defense then cancelled its scheduled pre-trial deposition of Murray.
Florida Rule of Criminal Procedure 3.220(a)(2), in accordance with the Brady holding, requires that the state disclose to the defense evidence which tends to negate the guilt of the accused as to the offense charged. This obviously refers to exculpatory evidence which the state has and the defense does not have. In the instant case, the evidence of Murray which the state had prior to trial was not exculpatory nor relevant nor admissible. Murray had no material information which tended to negate Herman's guilt. See Wilcox v. State, 299 So.2d 48 (Fla. 3d DCA 1974).
Even had there been a specific defense request for the pre-trial statement of Murray, which there was not, a new trial is necessary only when that evidence is material. Antone v. State, 382 So.2d 1205 (Fla. 1980), cert. denied, ___ U.S. ___, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980). Murray's uncertainty concerning the operability of the Laiser car was not material evidence. Omitted evidence must create a reasonable *231 doubt that otherwise would not exist in order to justify the granting of a new trial. Gosman v. State, 383 So.2d 1178 (Fla. 4th DCA 1980).
The trial judge correctly denied the motion for new trial based on the state's failure to disclose the Murray statement.

POINT IX
The appellant moved for an evidentiary hearing and a new trial on the ground that the jury acted improperly in reaching its verdict.
The first alleged instance of misconduct raised by appellant occurred during trial. A thirteen-year-old girl, Jennifer Warren, said she overheard a juror's son, Todd Thomas, tell another classmate on the school bus that his mother, Ona Thomas, who had just been selected as a juror in the Herman case, had a preconceived opinion of the defendant's guilt. This was brought to the attention of the trial court and an inquiry was held, wherein Todd Thomas denied making the statement attributed to him by the girl and denied ever having discussed the matter of Herman's guilt or innocence with his mother. The trial court found no basis to remove Ms. Thomas as a juror based on the uncorroborated hearsay statement of Jennifer Warren, and we see no basis to disturb that ruling.
Appellant's post-trial motions for evidentiary hearing and new trial contained multifarious allegations of misconduct by jurors. First, in support of his motion for an evidentiary hearing, appellant presented the testimony of Ann Warren (the mother of Jennifer), who testified that she met Juror Ona Thomas at a school function approximately one month after the Herman trial, and overheard a conversation between Thomas and a teacher, Mr. Clepp, in regard to the Herman trial. She testified that Thomas told Clepp that Officer Sheets was a member of her church (a fact disclosed to defense counsel on voir dire) and, being a good Christian, his testimony was true. Ms. Warren then approached Ms. Thomas and asked her questions about the Herman trial. Ms. Thomas told her that she had believed the trial testimony of state witnesses Gibson, DeNono, and Coffin. According to Ms. Warren, Ms. Thomas also told Clepp that she had overheard Defense Counsel Sepe apologize to the prosecutor for his treatment of the witness Sheets, and offer to convey this apology to the jury  an incident denied by Sepe.
Juror Thomas was questioned extensively on voir dire in regard to any preconceived opinions and it was brought out that Lt. Sheets, a scheduled witness for the state, was a member of her church. She swore that she could properly evaluate his credibility, and defense counsel chose not to dismiss her. The fact that Thomas believed the testimony of certain witnesses at trial was not improper. It is the function of a juror to weigh and assess the credibility of witnesses.
In support of the motions, the appellant also presented to the trial court the affidavit of Robert Nelson, which averred that David Reichardt, the son of juror Helen Reichardt, had told him shortly after trial had begun, that his mother believed Herman to be guilty. This assertion, which amounts to nothing more on its face than Reichardt's belief as to what his mother believed, is patently insufficient and inadmissible. It does not even purport to quote a statement made by the juror in question.
Appellant also presented to the trial court an affidavit from one Barbara Murray, who was a member of the venire at the time the Herman jury was selected, and who swore that one of the jurors selected, Edith Berman, had stated, after her selection but before completion of jury selection, her belief in Herman's guilt because of "all the trouble he has been in" and because of the grand jury indictment. During voir dire, Juror Berman testified that she had no preconceived opinion about the case, did not know much about it, and would base her verdict solely on the evidence produced at trial.
In the case of McGowan v. State, 89 Fla. 5, 102 So. 890 (1925), the Florida Supreme *232 Court considered an analogous situation. In that case, two witnesses testified at a post-verdict hearing that a trial juror had stated that if the defendants were not convicted, it would not be safe to walk the streets. On voir dire, the juror had disavowed any bias or prejudice and swore to be guided solely by the evidence  as did Edith Berman. The Supreme Court held that it was a matter within the sound discretion of the trial court to accept the answers of the juror on voir dire as opposed to the testimony of the two witnesses. The Court also observed that there was no showing made by counsel for the defense that he could not by due diligence have discovered the fact of the alleged expressions before the jury was impaneled. There was no such showing by defense counsel in the instant case. In McGowan, the Supreme Court stated:
In a matter of this character, where a verdict is attacked upon the alleged disqualification of a juror, and the evidence of such disqualification is supported by ex parte affidavits, the rule requiring a clear and unequivocal statement by the accused and his counsel that they were ignorant of the disqualifying expressions before the jury was impaneled, that due diligence was exerted by them to discover the existence of any such disqualification, and that the matter must be left largely to the discretion of the trial judge, who may know the witnesses and be able to judge their credibility, obtains in this state. See Yates v. State, 26 Fla. 484, 7 So. 880.
After verdict, all presumptions of law are in favor of the juror's competency, and the burden of proof is upon one who attacks it. See 8 Ency. of Evidence, 986.
102 So. at 892.

POINT X
Appellant's last point on appeal relates to the trial court's denial of his motion to prevent television coverage of his trial. The United States Supreme Court has disposed of this issue contrary to the contentions of the appellant in the recent case of Chandler v. Florida, ___ U.S. ___, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981).

CONCLUSION
For the reasons discussed above, the cross-appeal of the state is moot and the judgment of guilt is
AFFIRMED.
UPCHURCH, FRANK D., Jr., and SHARP, WINIFRED J., Associate Judges, concur.
NOTES
[1] Several witnesses testified to hearing three separate shots. This, coupled with the three shotgun shell wads and only two shell casings, indicated the probability of a pump shotgun. The third shell casing would have remained in the chamber of the weapon. Certain microscopic marks on the two spent cases eliminated a bolt action shotgun, a double-barrelled gun, or a single-barrelled gun. An automatic gun would have ejected the third shell casing.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] Section 905.04 provides in pertinent part:

(1) The state or a person who has been held to answer may challenge an individual prospective grand juror on the ground that the juror:
(b) Has a state of mind that will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging... .
[4] This admission against interest would have made the shotgun admissible had it preceded the proffer of the shotgun; and the subsequent admission of the admission against interest further supports our conclusion that admission of the shotgun, if error, was harmless.