15 So.3d 936 (2009)
Derrick KNIGHT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D07-2612.
District Court of Appeal of Florida, Third District.
August 12, 2009.
Rehearing Denied September 1, 2009.
Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Douglas J. Glaid, Assistant Attorney General, for appellee.
Before SUAREZ and SALTER, JJ., and SCHWARTZ, Senior Judge.
*937 SALTER, J.
Derrick Knight appeals his conviction and sentence for manslaughter, aggravated battery, shooting a deadly missile into a vehicle, possession of cocaine, and possession of drug paraphernalia. On appeal, he contends that the trial court erred in overruling objections to the admission into evidence of photographs of three handguns, a shotgun, and ammunition that allegedly "had nothing to do with this case."[1] We affirm, finding that: (a) the admission of the photographs was not an abuse of discretion, and (b) even if concluded to be an abuse of discretion, admission of the photographs was harmless error in light of Knight's counsel's numerous references during voir dire to "gun collections" and acknowledgment to the jury in opening statement ("yes, he [Knight] does collect guns").

The Shooting
The evidence at trial showed that the manslaughter victim, Chris Marson, drove with Luis Romero and Jonathan Ramesar to Knight's home around midnight in October 2003. Conflicting testimony indicated that the three were visiting to buy drugs or to rob Knight. After parking the car in front of Knight's house, Romero walked toward the front door. By two witnesses' accounts, Romero had a .357 Glock pistol in his hand, concealed by a shirt wrapped around the hand, and he fired two or more gunshots when asked what was hidden in the shirt.
One of the eyewitnesses gave a statement the morning after the shooting relating that when Romero fired the first shot, she and another witness "went in Derrick's home and we let him know there was a guy shooting in front of his house. At the time he reached behind a dresser by his bed and grabbed an AK-47 and with that he went walking towards outside."[2] The 2003 statement also included her account that Knight was outside pointing the AK-47 at "the guy with the gun."
What was uncontroverted, however, was that nine spent casings matching the rounds fired from his AK-47 were in Knight's front lawn, Marson was mortally wounded, Romero had sustained a grazing gunshot wound to his head, and the three visitors' car itself was riddled with multiple gunshots. Two other gunshots randomly struck a residence down the street. Detectives responded first to find the car on the side of the road with Marson slumped over the wheel.

The Search
In a consensual search of Knight's residence shortly after the gunfire, detectives found and photographed in his bedroom three handguns, a shotgun, and various types of ammunition. Receipts for purchase and a Florida concealed weapons license were also voluntarily provided.
Upon further investigation in the attic crawl space above the residential ceiling, however, a law enforcement officer also found and photographed Knight's AK-47 concealed in the insulation.

*938 "Collecting Guns" and the Photos

During voir dire, defense counsel inquired whether prospective jurors had "any particular feelings about firearms or people possessing them or collecting them?" To another member of the venire, defense counsel inquired, "How do you feel about people holding guns or collecting guns?" Another prospective juror was asked by the defense, "Do you collect guns?" Another was asked what he or she would think if "somebody" used part of a gun collection in self defense because their life was being threatened.
During opening statement, the defense affirmatively acknowledged Knight's collection of various firearms:
They wake [Knight] up and say, somebody is shooting outside at us and at your brother, because Derrick's brother was outside with those people. Derrick gets up and yes, he does collect guns, yes, he has guns, and we talked about it in jury selection about what it is to have guns and that, if you purchased them legally and you collect them and as you heard, it is not an unusual thing jurors on the panel collect guns and have guns and every gun that was in that house, he owned legally and had receipts for because he purchased them legally in a store as any one of us can do, legally in the state of Florida or anywhere in the United States, including this rifle, this AK-47.
While these questions and comments were not evidence and did not "open the door" (in the usual sense of that term) to the admission of the photos of those guns found during the search of Knight's bedroom (but not used in the shooting charged in the information), they may explain why the trial court thought it likely that the other guns would be an issue during the trial. In denying the objection to the admission of the photos, the trial judge referred to her notes regarding the "gun collection" exchanges during jury selection, and she explained that the "other guns" were found quickly in Knight's bedroom during the consensual search, while "the murder weapon was hidden in the crawl space."
Evidence of concealment of a murder weapon, or of other efforts to distract investigators,[3] is generally relevant because it reflects "consciousness of guilt."[4]
We review the trial court's ruling on admissibility for an abuse of discretion. A "trial court has broad discretion in determining the relevance of evidence and such determination will not be disturbed absent an abuse of discretion." Heath v. State, 648 So.2d 660, 664 (Fla.1994); see Castro v. State, 547 So.2d 111, 114 (Fla. 1989). In the context of the trial proceedings to that point, reasonable trial judges might well disagree on whether the defense objection should have been overruled or sustained, and thus no abuse of discretion has been shown.

Harmlessness
We also conclude that the alleged error in admitting the photos of the other weapons and ammunition was harmless beyond a reasonable doubt. The evidence regarding Knight's ownership and discharge of the AK-47, and regarding the death of one victim and the wounding of another, was overwhelming. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Though self defense was claimed, the evidence was *939 clear that Knight's other weapons were not used in the shooting. Mere proof of legal ownership of the other weapons was, as defense counsel elicited from the venire, not to be considered prejudicial. See Herman v. State, 396 So.2d 222, 229 (Fla. 4th DCA 1981).

Conclusion
For these reasons, we affirm the circuit court conviction and sentence.
SCHWARTZ, Senior Judge (concurring).
I concur only because any error with respect to the firearms issue was harmless beyond a reasonable doubt. I would go no further.
NOTES
[1] Knight raised a second argument as well, relating to a law enforcement officer's use of the term "killing machine" in describing the AK-47 assault rifle used to shoot and kill the victim in the case. The trial court denied a defense motion for mistrial regarding that characterization, but issued a curative instruction. Following the curative instruction, defense counsel immediately used the term three times in cross-examination. We find no abuse of discretion in the trial court's denial of the motion for mistrial.
[2] At the time of trial, the witness testified that she could not recall the details in her statement and that she was scared to testify. When she did not respond to a trial subpoena, her attendance was compelled by writ of bodily attachment.
[3] Had investigators limited themselves to the four weapons in Knight's bedroom found early in the consensual search, they would have been unable to tie a weapon to the shell casings and projectiles found outside.
[4] Alessi v. State, 969 So.2d 430, 433-34 (Fla. 5th DCA 2007).