530 So.2d 269 (1988)
Etheria Verdell JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 69197.
Supreme Court of Florida.
May 5, 1988.
Rehearing Denied September 1, 1988.
*270 Michael E. Allen, Public Defender and Paula S. Saunders, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Kurt L. Barch, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Etheria Jackson appeals his conviction for first-degree murder and his death sentence imposed by the trial judge in accordance with the jury's recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm appellant's conviction and sentence.
Wendell and Linton Moody operated a retail furniture business in Jacksonville, Florida. To facilitate the collection of monthly installment payments, Linton obtained cash from the bank every month and then cashed customers' government checks, deducting their installment bills from the respective checks. On November 29, 1985, Linton cashed a check at the bank for $4,000. On December 2, Linton worked in the furniture store from 10:30 a.m. until early afternoon. The following day Linton failed to report for work and his brother filed a missing person report. On December 5, Officer Raymond Godbee discovered Linton's body rolled up in a carpet in the back of Linton's 1983 Chevrolet station wagon. Several pieces of evidence were discovered with the body, including the victim's brown briefcase and a calling card box. On the same day, Linda Riley, appellant's live-in girlfriend and the mother of one of appellant's children, reported Linton's murder to the police department. According to Linda Riley's trial testimony, she purchased a washing machine from Linton Moody on the installment plan. On December 3, 1985, Linton came to her home to collect the monthly payment. On this particular occasion, Riley's two children and the appellant were also present. Riley stated that after Linton cashed the check, he gave her a receipt. At this point, the appellant, Jackson, grabbed Moody and put a knife to his neck. Riley testified that appellant then forced Moody to the floor and directed her to remove his wallet and keys. As the sixty-four-year-old Moody begged for mercy, he was bound, gagged, and then choked with a belt until he was unconscious. After Moody regained consciousness, Jackson beat him in the face with a cast on his forearm and then straddled his body and repeatedly stabbed him in the chest. Jackson and Linda Riley then disposed of the body by rolling it up in a carpet and stuffing it in the back of the victim's car. The car was driven by Jackson to another location and abandoned, where it was later discovered by police. Riley also testified that after Jackson left with the body, he returned forty-five minutes later with two men, summoned Riley into the kitchen, and asked her to inject cocaine into his arm.
One of the two men who returned with Jackson also testified at the trial and stated he was driving with a friend when they were flagged down by a man with a cast on his forearm, later identified as Jackson. He stated Jackson asked if they knew where to find cocaine, and offered to purchase a tank of gas for the witness's car, stating, "I'll fill your tank, I have money all over, I just hit a sweet lick." According to the witness, Jackson later pulled stacks of folded twenty- and fifty-dollar bills from his pockets. After they purchased drugs, the witness said they returned to Jackson's house where his girlfriend injected him with cocaine.
*271 An autopsy established that the victim had numerous bruises on the head, face, and neck, a shallow slash wound on the neck, a rug-burn on the left elbow, and bruised kneecaps. The victim also sustained seven stab wounds in the upper left chest area, causing massive internal bleeding and death. There was no blood on the lower extremities, indicating the victim was prone when the injuries were inflicted. The bruises on the neck were consistent with strangulation by either a forearm or cast, or possibly a broad belt.
In an interview with detectives on December 9, Jackson said Riley committed the murder and claimed he was not present when it occurred. He further stated on this occasion that an affair between Riley and the victim while he was in prison had prompted the killing. Jackson's mother testified that Jackson visited with her on December 8 and related three different versions of the murder, at least two of which placed Jackson at the scene of the crime.
The investigating detectives obtained a search warrant for Jackson's cast. In accordance with the warrant, they took Jackson into custody and brought him to Jacksonville's University Hospital to examine his cast for blood traces. One of the detectives testified that during this time Jackson made statements to the detective, admitting that the detective had him "like a hawk" and stating, "I had the opportunity." The detective testified that when he replied that Jackson still had the opportunity to tell the truth, Jackson responded, according to the detective, "Not really, I have to go with what I told you, I can't change my story now." The examination of the cast failed to produce any blood trace evidence. The state did present, however, expert testimony matching appellant's fingerprints with prints found on the victim's calling card box. The jury found Jackson guilty of first-degree murder.
In the penalty phase, the state presented witnesses who established that Jackson was previously convicted of armed robbery and escape.
Multiple witnesses were presented on Jackson's behalf. A former attorney who represented appellant Jackson on the armed robbery charge testified that appellant had pled guilty and agreed to be a state witness against his codefendant for that offense. Evidence from the family reflected that Jackson was talented, intelligent, and a good student; that he was respectful and helpful to members of the family; that he helped care for his older sister, who had polio, and his father, who suffered from arthritis and a heart condition. Favorable testimony was also given by Vanessa Jackson, the mother of two of appellant's children. Appellant's mother testified that appellant had substantially changed in the month before Moody's murder and that she assumed he was under the influence of drugs. Jackson testified in his own behalf, advising the jury that he wanted to live, that he loved his parents and children, and, if given a chance to live, he would try to be a positive influence on his children's lives, as he always had been.
A jury recommended the death penalty by a seven-to-five vote, and the trial judge imposed the death penalty, finding five aggravating circumstances and no mitigating circumstances.

Guilt Phase
Jackson raises three separate instances of alleged error in the guilt phase of the trial, specifically: (1) limiting appellant's cross-examination of Linda Riley concerning her present dating relationships; (2) allowing the state to introduce evidence that Jackson had been in prison prior to this offense; and (3) admitting the statements Jackson made to a detective during the examination of his arm cast.
In his first point, Jackson contends the trial court erred by improperly restricting his cross-examination of Linda Riley. Linda Riley was an eyewitness to the crime and provided the state's chief testimony. On direct, Riley testified that she continued to see the appellant after he was in jail, brought him money, and maintained a relationship with him. On cross-examination, appellant's counsel wanted to impeach this testimony by asking the witness if she had been seeing someone else while the appellant was in jail. The trial court sustained *272 the state's objection. We find the trial court was within its discretion in sustaining the objection to the question as it was presented. Sireci v. State, 399 So.2d 964 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).
In his second point, Jackson claims that admitting evidence of his prior incarceration was improper and that it was introduced solely to show bad character. Appellant's statement to the detective that Linda Riley had killed Moody because of an affair which had occurred while Jackson was in prison was presented to the jury without objection. The state asked Riley when the appellant was released from prison and if she had ever had an affair or sexual relations with Moody, questions directly related to appellant's own statement. This evidence was relevant to an issue other than the appellant's character, and we find its introduction was not error. See Drake v. State, 441 So.2d 1079 (Fla. 1983), cert. denied, 466 U.S. 978, 104 S.Ct. 2361, 80 L.Ed.2d 832 (1984).
In his third point, appellant claims his statements at the hospital to a detective during the time his cast was being tested, including, "No, man, I'll go with my story, I can beat you, you can't prove this on me," and his further statement that he would have to be caught on the rebound because the crime couldn't be proved on him, were both erroneously admitted. Appellant argues that these statements were not admissions against interest, but were hearsay and inadmissible. We find appellant's out-of-court statements both relevant and admissible. Although Jackson's statements to a detective at the University Hospital are hearsay, they are admissions and fall under section 90.803(18), Florida Statutes (1985). Additionally, when viewed in context with Jackson's statements to his mother, the jocular boastings of appellant are clearly relevant to Jackson's state of mind, and also fall squarely under section 90.803(3)(a), Florida Statutes (1985).
Finally, from our separate examination of the record, we find the evidence clearly sufficient to support the conviction.

Penalty Phase
The trial judge, in imposing the death sentence, found the following aggravating circumstances: (1) the murder was committed while the defendant was under sentence of imprisonment because he was on parole at the time of the killing; (2) the defendant was previously convicted of a felony involving the use or threat of violence to some person (armed robbery); (3) the murder was committed for financial gain; (4) the murder was especially wicked, evil, atrocious, or cruel; and (5) the murder was committed in a cold, calculated, and premeditated manner. The trial judge concluded that "no statutory or nonstatutory mitigating circumstances exist."
Appellant claims five errors occurred in the penalty phase. Specifically, appellant asserts the trial court erred by: (1) permitting the state to introduce evidence of appellant's conviction for escape, because the evidence was unnecessary to prove the aggravating circumstance that appellant was in prison at the time of the offense; (2) allowing the state to cross-examine appellant regarding prior convictions; (3) refusing to give the jury specific instructions as to the nonstatutory mitigating circumstances it could consider; (4) improperly doubling up the aggravating circumstances of heinous, atrocious, and cruel, and cold, calculated, and premeditated; and (5) failing to allow evidence that the parole commission does not consider for parole inmates serving life sentences without eligibility for parole for twenty-five years as a mitigating circumstance.
With regard to the first point, the appellant filed a motion in limine to prohibit the state from introducing, during the sentencing proceeding, the fact that the defendant was on parole for escaping from prison when this murder occurred. The motion was denied and the appellant now claims that advising the jury of his prior escape conviction was unnecessary, since appellant offered to stipulate that he was on parole when the crime occurred. Further, appellant argues that the conviction's probative value was substantially outweighed *273 by its prejudicial effect. We reject this claim. Evidence of the particular offense for which appellant was on parole may be admitted to establish the aggravating factor permitted by section 921.141(5)(a), Florida Statutes (1985). Cf. Mann v. State, 453 So.2d 784 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985) (the state may introduce testimony in a sentencing proceeding regarding the circumstances of a prior conviction).
In his second point, appellant claims the trial court erred by permitting the state to cross-examine him about prior criminal convictions during the penalty phase because he had waived reliance upon the mitigating factor of no significant prior criminal activity. During sentencing, appellant's direct testimony was limited to the following:
Q Let me ask you this, Mr. Jackson: Do you want to live?
A Yes, I do.
Q Do you love your mom and dad?
A Yes, I do.
Q Do you love your children?
A Yes.
Q Mr. Jackson, if you spend the rest of your life in prison, will you do your best to be a positive influence in the lives of your children?

A Yes, I will, I always have been.

Following this testimony, the state, over appellant's objection, asked appellant if he had previously been convicted of a felony. When he responded that he had, he was asked how many, to which he answered "three." Appellant claims the state had already introduced the prior conviction of a violent felony and the reference here to other felonies was prejudicial. In Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981), we held that when the defendant waives reliance on no significant prior criminal activity, the state cannot introduce evidence of nonviolent crimes. Here, however, the question pertaining to other felonies came out in cross-examination of the appellant and was proper to impeach his credibility under section 90.610, Florida Statutes (1987). Moreover, we cannot say that appellant's claim that he had "always" been a positive influence in the lives of his children did not open the door to demonstrate, with his prior felony convictions, that this was not "always" the case.
In his third point, appellant argues that the standard jury instruction on mitigating circumstances, which included an instruction to the jury that it could consider any other aspect of the defendant's character or record, or any other circumstances of the offense, was inadequate. Further, appellant claims it was constitutional error for the trial court to refuse to instruct the jury according to a written list of nonstatutory mitigating circumstances prepared by appellant. We find these contentions without merit. Florida's standard jury instruction complies with the constitutional principles set forth in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).
In his fourth point in the penalty phase, appellant argues that the cold, calculated, and premeditated aggravating factor, when used with the aggravating factor of heinous, atrocious, and cruel, results in an impermissible doubling of aggravating factors and is prohibited under the principles of Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). In Provence, we held that it was improper to utilize the aggravating factor that the crime was committed for pecuniary gain with the aggravating factor that the murder occurred during the course of a robbery. We reject the contention that Provence applies to the aggravating circumstances utilized in this case. We do, however, find that the application of cold, calculated, and premeditated as an aggravating circumstance was error under the principles we recently enunciated in Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). We find the evidence does not establish the heightened degree of prior calculation and planning required by our Rogers decision.
*274 Although we have rejected the cold, calculated, and premeditated aggravating factor, four valid aggravating circumstances remain. After reviewing this record, we are convinced that elimination of the cold and calculated aggravating factor would not have resulted in a life sentence for this appellant. We note the trial judge found no mitigating circumstances. See, e.g., Hill v. State, 515 So.2d 176 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); Bassett v. State, 449 So.2d 803 (Fla. 1984).
In his final point, appellant maintains he was prohibited from presenting the philosophy of the present parole commission to not grant parole to defendants convicted of capital offenses as a mitigating circumstance. We find that claim without merit. That fact does not concern the appellant's character and, in any event, it is probable that none of the present parole commission would be serving at the time Jackson could be eligible for parole in twenty-five years had a life sentence been imposed.
For the reasons expressed, we affirm Jackson's conviction and sentence of death.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.