633 So.2d 1051 (1993)
Etheria Verdell JACKSON, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Etheria Verdell JACKSON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 75846, 78909.
Supreme Court of Florida.
September 9, 1993.
Rehearing Denied January 13, 1994.
*1052 Michael J. Minerva, Interim Capital Collateral Representative, and Martin J. McClain, Chief Asst. CCR, Ken Driggs, and Deborah K. Nimmons, Asst. CCR's, Office of Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Carolyn M. Snurkowski, Asst. Atty. Gen., Tallahassee, for respondent/appellee.
PER CURIAM.
Etheria Verdell Jackson, a prisoner under sentence of death, appeals the trial court's denial of his motion under Florida Rule of Criminal Procedure 3.850. Jackson has also filed a petition for writ of habeas corpus directly with this Court. We affirm the trial court's denial of Jackson's rule 3.850 motion and deny his motion for writ of habeas corpus.[1]
Etheria Jackson was found guilty of the first-degree murder of Jacksonville furniture store owner Linton Moody and sentenced to death. The facts of the murder are set out in Jackson v. State, 530 So.2d 269 (Fla. 1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989), in which we affirmed Jackson's conviction and sentence of death. Pertinent to these proceedings are the following facts taken from that opinion:
On December 3, 1985, Linton came to [Linda Riley's] home to collect the monthly payment [on a washing machine purchased from Moody's retail furniture business.] On this particular occasion, Riley's two children and the appellant were also present. Riley stated that after Linton cashed [her government] check, he gave her a receipt. At this point, the appellant, Jackson, grabbed Moody and put a knife to his neck. Riley testified that appellant then forced Moody to the floor and directed her to remove his wallet and keys. As the sixty-four-year-old Moody begged for mercy, he was bound, gagged, and then choked with a belt until he was unconscious. After Moody regained consciousness, Jackson beat him in the face with a cast on his forearm and then straddled his body and repeatedly stabbed him in the chest. Jackson and Linda Riley then disposed of the body by rolling it up in a carpet and stuffing it in the back of the victim's car. The car was driven by Jackson to another location and abandoned, where it was later discovered by police.
Id. at 270.
Jackson's theory of defense was that his girlfriend, Linda Riley, committed this murder. Jackson made an initial statement to arresting officers that they had him "like a hawk," and his statements varied from total denial of being at the premises when the murder occurred to admitting that he helped Riley dispose of the body. The jury found Jackson guilty as charged. In the penalty phase, the jury was instructed on the following five aggravating circumstances: (1) the crime was committed while Jackson was under sentence of imprisonment; (2) Jackson was previously convicted of a crime of violence; (3) the crime was committed during the course of a robbery or for pecuniary gain; (4) the crime was especially wicked, evil, atrocious, or cruel; (5) the crime was committed in a cold, calculated, and premeditated manner. At the jury instruction conference, Jackson's defense counsel objected to the heinous, atrocious, or cruel instruction on the ground it was vague but did not submit a suggested instruction to the court. *1053 The jury returned a recommendation of death by a vote of seven to five. In imposing the death penalty, the trial judge found that all five aggravating factors were present and that no mitigating factors existed.
On direct appeal, this Court held that the trial court improperly found the cold, calculated, and premeditated aggravating factor, but concluded that the elimination of this aggravating factor would not have resulted in a life sentence, stating:
Although we have rejected the cold, calculated, and premeditated aggravating factor, four valid aggravating circumstances remain. After reviewing this record, we are convinced that elimination of the cold and calculated aggravating factor would not have resulted in a life sentence for this appellant. We note the trial judge found no mitigating circumstances. See, e.g., Hill v. State, 515 So.2d 176 (Fla. 1987), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); Bassett v. State, 449 So.2d 803 (Fla. 1984).
Jackson, 530 So.2d at 274. Jackson's petition for certiorari to the United States Supreme Court was denied. See Jackson v. Florida, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989).
Jackson then sought relief in the state trial court by a motion to vacate judgment of conviction and sentence under rule 3.850, which included claims of ineffective assistance of counsel. The trial judge summarily denied the motion without requesting an answer from the State and without providing a hearing for argument on the motion. In the order denying the motion, the trial judge stated:
The Motion, although characteristically voluminous, verbose, and petty, is legally insufficient on its face to entitle the Defendant to the relief sought. The Motion in fact does little but rehash evidentiary and procedural issues which were put to rest by direct appeal. The argument as to ineffective assistance of counsel is on its face legally insufficient to the point of being spurious.
Jackson then filed a motion for rehearing, together with a motion to amend, which sought a court order for access to records of the Department of Health and Rehabilitative Services (HRS) concerning Linda Riley's two children. Jackson is the father of one of Riley's children. The trial judge denied both of these motions and Jackson now appeals the denial of all of the motions.
In this appeal, Jackson asserts: (1) that he is entitled to a full evidentiary hearing on all claims; (2) that HRS's refusal to disclose evidence contained in its files relative to Jackson's and Linda Riley's children was constitutional error and violates chapter 119, Florida Statutes (1991); (3) that trial counsel rendered ineffective assistance of counsel at the guilt and penalty phases of his trial because: (a) the court limited cross-examination of Linda Riley; (b) trial counsel failed to investigate and present impeaching evidence against Linda Riley; (c) counsel failed to present evidence that Jackson voluntarily turned himself in to authorities; (d) counsel failed to investigate and present ample available evidence in support of voluntary intoxication and mental health defenses; (e) there was a conflict of interest within the public defender's office that prevented an attorney-client relationship from forming, rendering counsel's assistance ineffective; and (f) Jackson was denied his rights to effective, adequate mental health assistance because relevant mitigating evidence was not presented or considered by the jury or judge due to trial counsel's failure to investigate and develop this evidence; (4) that Jackson's death sentence was invalid because unconstitutionally vague instructions were presented to the jury with regard to the aggravating factors of heinous, atrocious, or cruel and cold, calculated, and premeditated; (5) that the trial judge and this Court violated the eighth amendment by refusing to recognize the mitigating evidence that was in the record; (6) that the use of nonstatutory aggravating factors tainted Jackson's penalty phase proceeding; (7) that Jackson's jury was erroneously instructed that a life recommendation required a majority vote; (8) that Jackson's jury was repeatedly misled as to the true extent of their responsibility in the sentencing process; and (9) that Jackson's jury was erroneously instructed that the burden was on the defendant to prove that a life sentence *1054 was justified. Claims (5) through (9) are procedurally barred and merit no further discussion.
With regard to Jackson's first claim, we agree with the trial judge that no evidentiary hearing was required on the issues presented in this case. We emphasize, however, that trial judges must now allow counsel for death penalty defendants to orally argue the legal issues presented in an initial motion for postconviction relief. Huff v. State, 622 So.2d 982 (Fla. 1993). In Huff, we explained:
Because of the severity of punishment at issue in a death penalty postconviction case, we have determined that henceforth the judge must allow the attorneys the opportunity to appear before the court and be heard on an initial 3.850 motion. This does not mean that the judge must conduct an evidentiary hearing in all death penalty postconviction cases. Instead, the hearing before the judge is for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion.
Id., at 983. However, Huff was intended to be applied prospectively only and, therefore, is not available to Jackson.
Jackson's second claim concerns the trial court's order denying his request for production of HRS records regarding the seizure of his and Linda Riley's children. Jackson asserts that this information is relevant to impeach Riley, who was the State's principal witness against him. In Hoffman v. State, 613 So.2d 405 (Fla. 1992), we explained the process by which prisoners sentenced to death may obtain the public records connected with their cases and in the hands of the prosecutors as distinguished from the records of state agencies that have not been connected in any respect with the trial and prosecution of such defendants. We stated:
[W]ith respect to agencies outside the judicial circuit in which the case was tried and those within the circuit which have no connection with the state attorney, requests for public records should be pursued under the procedure outlined in chapter 119, Florida Statutes. Because those requests will be made directly to such agencies, they will be in a position to raise any defenses to the disclosure which they may deem applicable... .
We emphasize, however, that all public records in the hands of the prosecuting state attorney are subject to disclosure by way of motion under Florida Rule of Criminal Procedure 3.850 even if they include the records of outside agencies.
Id. at 406. In this instance, the records requested were not in the hands of the state attorney and, consequently, seeking those records in a rule 3.850 proceeding is improper.
In his third claim, Jackson raises the seven ineffective assistance of counsel claims articulated above. With regard to these issues, we find that the trial judge's limitation of the defense's cross-examination of Linda Riley was disposed of on direct appeal in Jackson, and that the record does reflect that Jackson turned himself in to the police and that the jury had full knowledge of this fact. Further, the record reflects that defense counsel fully cross-examined Linda Riley in regard to her motivation for testifying against Jackson.
Next, Jackson asserts that defense counsel failed to present mental health defenses at trial and, thus, was ineffective. We find that the record establishes that Jackson's counsel obtained the services of a mental health expert and that Jackson's pleadings fail to show what that mental health expert would have testified to if called to testify. Conclusory allegations are not sufficient to require an evidentiary hearing on this issue. Jackson next argues that his trial counsel was ineffective for not presenting a voluntary intoxication defense. In this regard, the record reflects that Jackson's theory at trial was that Linda Riley committed the murder, not that he was intoxicated at the time of the murder. Nothing in the record or in these pleadings establishes that Jackson was intoxicated during or immediately before the commission of the murder. The only evidence of intoxication reflected in the record is that Jackson had Riley inject him with cocaine after he returned from disposing of the body. We note that, even *1055 though the intoxication defense is inconsistent with Jackson's statements regarding the events and the fact that no evidence of intoxication was presented, the trial judge still instructed the jury on this defense.
We have examined each of Jackson's ineffective assistance of counsel claims in accordance with the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and find that counsel was not deficient in representing Jackson in these proceedings.
With regard to the asserted conflict within the public defender's office and the conclusion that the conflict prevented an attorney-client relationship from developing, we find that claim is procedurally barred. The record indicates that the trial judge had a full evidentiary hearing on the alleged conflict within the public defender's office prior to the initial trial and concluded that the public defender could continue representing Jackson. That issue was not raised either on appeal of a nonfinal order prior to the trial on the merits or on direct appeal and, accordingly, is procedurally barred. Johnson v. State, 593 So.2d 206 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992).
In his fourth claim, Jackson argues that he is entitled to a resentencing proceeding due to the fact that the sentencing jury was instructed in accordance with the standard jury instruction on the heinous, atrocious, or cruel aggravating factor that was held to be unconstitutional by the United States Supreme Court in Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). We agree that the record reflects that defense counsel objected to the heinous, atrocious, or cruel factor being considered as an aggravating circumstance in this case and that trial counsel requested an additional instruction concerning this aggravating factor's application in regard to what was done to the body of the victim after death. The request was denied. This issue was not raised on appeal; consequently, it is procedurally barred. Johnson; Smith. However, were we to address this issue on the merits, we would find that the reading of the defective instruction was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The record reflects:
As the sixty-four-year-old Moody begged for mercy, he was bound, gagged, and then choked with a belt until he was unconscious. After Moody regained consciousness, Jackson beat him in the face with a cast on his forearm and then straddled his body and repeatedly stabbed him in the chest.
Jackson, 530 So.2d at 270. We find that the evidence presented clearly established the "heinous, atrocious, or cruel" aggravating factor, and that, regardless of the instruction given, the jury would have recommended and the judge would have imposed the same sentence. See Thompson v. State, 619 So.2d 261 (Fla. 1993); Slawson v. State, 619 So.2d 255 (Fla. 1993); Happ v. State, 618 So.2d 205 (Fla. 1993).
We have also examined each of the claims contained in Jackson's petition for writ of habeas corpus[2] and find that they are without merit and that the petition for writ of habeas corpus should be denied.
In summary, we conclude that this record clearly establishes that Jackson's motion for postconviction relief under rule 3.850 was properly denied. Furthermore, we deny Jackson's petition for writ of habeas corpus.
It is so ordered.
*1056 BARKETT, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
SHAW, J., concurs in result only.

ON REHEARING
PER CURIAM.
In his motion for rehearing, Jackson argues that the Court erred in "its unprecedented retroactive application of the Hoffman rule" and that such application is unfair. We recognize that the Hoffman rule was not announced until after Jackson had begun his pursuit of the HRS documents, and that Jackson was proceeding up to this point according to our prior decisions in Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990), and State v. Kokal, 562 So.2d 324 (Fla. 1990). As in Hoffman, we would ordinarily permit a defendant to seek the HRS records and allow the amendment of a 3.850 motion to include any new information that he may discover. However, in this instance, Jackson was seeking only the HRS records pertaining to Riley's children and was doing so ostensibly to determine whether the records contained anything that could be used to impeach Riley at trial. Even if these records do contain impeachment material, there would still be no basis on which to set aside Jackson's conviction. Jackson's defense counsel extensively cross-examined Riley at trial with respect to her concern over the fact that her children had been taken into custody by HRS. This cross-examination implied that Riley was testifying against Jackson to please the State and thereby get her children back. Even without the HRS records, this cross-examination had an impeaching effect on Riley's testimony. Therefore, the trial judge's order denying access to the HRS records did not prejudice Jackson. Rehearing denied.
OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., and KOGAN, J., concur in result only.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(1), (9), Fla. Const.
[2] In his petition for a writ of habeas corpus, Jackson alleges that: (1) this Court improperly placed exclusive sentencing authority with the jury and the trial judge by not reweighing the aggravating and mitigating factors or applying a harmless error analysis; (2) this Court erred in finding that the trial court correctly found that there were sufficient aggravating circumstances to support the death sentence; (3) the trial court denied Jackson the right to an individualized and reliable sentencing proceeding; (4) the judge and jury improperly considered victim impact evidence; (5) the trial court's instruction improperly diluted the jury's sense of responsibility for sentencing and that counsel was ineffective for not litigating this issue; and (6) the prosecutor improperly commented on the evidence, thus rendering Jackson's conviction and sentence fundamentally unfair.