PER CURIAM.
 

 Joel Oquendo appeals the summary denial of his Florida Rule of Criminal Procedure 3.850 motion. Because the records attached by the trial court to the order of denial do not refute some of Oquendo’s claims, we reverse and remand for further proceedings. We also direct the trial court to give Oquendo at least one opportunity to amend insufficient claims.
 

 
 *1003
 

 Procedural Background
 

 Oquendo pleaded guilty in October 1997 to trafficking in cocaine and conspiracy to traffic in cocaine. As part of the plea, he entered into a substantial assistance agreement with the state and agreed to work with a Broward County detective in making drug-related arrests. A tape recording of Oquendo agreeing to the terms of the substantial assistance agreement was created and may have been incorporated as part of the negotiated plea in this case.
 

 A factual dispute exists as to whether Oquendo provided assistance or not, but he admits that after entering the plea, he fled to Sarasota, Florida and changed his name. He alleges that he feared for his life because he was threatened by unnamed individuals. Oquendo’s sworn post-conviction motion alleged that the detective who was supervising him instructed him to change his name and leave the jurisdiction until contacted by authorities. At a hearing in March 1998, the detective testified that Oquendo had violated the substantial assistance agreement by failing to maintain contact with the detective for several weeks. A warrant issued for Oquendo’s arrest. He was not apprehended until December 2005 when he was arrested in Miami-Dade County on multiple unrelated charges under the name Edis Rodriguez.
 

 Oquendo was eventually identified as the person who had absconded in this case. In March 2007, the trial court in this case found that Oquendo had violated the terms of his plea agreement and sentenced him to concurrent terms of fifteen years in prison on each count.
 

 Oquendo’s Motion
 

 Oquendo filed the instant motion for postconviction relief listing more than twelve claims that attack the voluntariness of his plea and raise other matters. We briefly restate the claims as follows: (1) Oquendo was not provided an interpreter during the plea proceedings; (2) Counsel induced Oquendo to plead guilty; (3) The plea entered without a translator is unconstitutional; (4) Oquendo did not understand and was not informed of the elements of the offenses with which he was charged; (5) Oquendo was not informed of the consequences of a breach of the substantial assistance agreement; (6) The court failed to inform Oquendo that he had the right to not plead guilty and the court failed to ensure that Oquendo understood this right or to obtain a written waiver of the right to jury trial; (7) The court failed to ensure that the plea to each count was knowing and voluntary and supported by a legally sufficient factual basis; (8) The court failed to inform Oquendo of the mandatory minimum penalties for trafficking in cocaine or of the “additional penalties” of certain state and federal statutes that impose civil sanctions on those convicted of drug trafficking; (9) The convictions were predicated on a stipulated factual basis even though a substantial factual basis was lacking; (10) Counsel allegedly gave Oquendo misadviee and the state allegedly violated the plea agreement; (11) The trial court failed to award Oquendo all of his jail credit; and (12) Oquendo’s conviction constitutes a manifest injustice because he is actually innocent and was “entrapped” by a confidential informant for the state.
 
 [1]
 

 Insufficiently-Pleaded Claims
 

 Most of these claims are conclusorily alleged and do not merit relief.
 
 See Atwater v. State,
 
 788 So.2d 223, 228 n. 5 (Fla.
 
 *1004
 
 2001) (explaining “ ‘[a] defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing’”) (quoting
 
 Kennedy v. State,
 
 547 So.2d 912, 913 (Fla.1989)).
 

 Longstanding Florida caselaw requires that a postconviction movant describe with sufficient detail the factual support for a claim or the claim may be summarily denied. “The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden.”
 
 Id.
 
 at 229;
 
 see also Morgan v. State,
 
 991 So.2d 835, 841 (Fla.2008);
 
 Doorbal v. State,
 
 983 So.2d 464, 482-84 (Fla.2008);
 
 McDonald v. State,
 
 952 So.2d 484, 489-90 (Fla.2006);
 
 Jones v. State,
 
 928 So.2d 1178, 1182 (Fla.2006);
 
 Parker v. State,
 
 904 So.2d 370, 378 (Fla.2005);
 
 Wright v. State,
 
 857 So.2d 861, 873 (Fla.2003);
 
 Reaves v. State,
 
 826 So.2d 932, 939-40 (Fla.2002);
 
 Freeman v. State,
 
 761 So.2d 1055, 1061 (Fla.2000);
 
 LeCroy v. Dugger,
 
 727 So.2d 236, 239-41 (Fla.1998);
 
 Jackson v. Dugger,
 
 633 So.2d 1051, 1054 (Fla.1993);
 
 Kennedy v. State,
 
 547 So.2d 912, 913 (Fla.1989).
 

 The conclusory claims in Oquendo’s motion did not require an evidentiary hearing. In
 
 Spera v. State,
 
 971 So.2d 754 (Fla.2007), however, the Florida Supreme Court determined that a trial court abuses its discretion when it fails to provide a postconviction movant at least one opportunity to amend a legally insufficient post-conviction motion that fails to meet pleading requirements. Nevertheless,
 
 Spera
 
 did not expressly disturb the long line of precedent permitting summary denial of conclusory claims.
 
 Cf. Baldwin v. State,
 
 978 So.2d 257 (Fla. 2d DCA 2008) (reversing denial of conclusory claim and remanding with directions to strike the insufficient claim). The Florida Supreme Court’s decisions in
 
 Morgan
 
 and
 
 Doorbal,
 
 cited above, issued after
 
 Spera
 
 and did not give the postconviction movants an opportunity to amend the conclusory claims.
 

 Record Attachments Do Not Refute Oquendo’s Allegations: Spera Requires Remand
 

 We are concerned with Oquendo’s numerous allegations regarding what occurred, or did not occur, at the plea hearing. The state attached to its response below a copy of the taped substantial assistance agreement in order to show that Oquendo could speak English, that he refused the assistance of a translator, and that he was advised of the terms of the agreement and the potential penalties he faced. The state did not attach any records regarding what transpired when the plea was entered, such as a transcript of a plea hearing or a written plea form. Thus, we cannot determine whether the terms discussed in the taped substantial assistance agreement were incorporated into the plea that Oquendo entered before the court.
 

 In addition, the tape offered to refute Oquendo’s claims was not authenticated. The state has not indicated that the tape it provided had been admitted into evidence in any prior proceedings in this case. While we agree that the person on the tape appears to have understood what was occurring and declined the assistance of an interpreter, the tape alone does not refute Oquendo’s claims regarding what occurred when he entered his plea.
 

 We must reverse and remand for further proceedings in this case because the records attached to the order of denial do not refute some of Oquendo’s claims that his plea was not knowingly and voluntarily entered. We do not believe that the tape provided by the state can conclusively refute all of the claims absent some evidence that the tape, or the agreement memorial
 
 *1005
 
 ized therein, was incorporated as part of the plea agreement. Further, absent a stipulation, the tape must be authenticated as a true representation of Oquendo’s substantial assistance agreement. § 90.901, Fla. Stat. (2007). The state has not suggested that the tape it provided was part of the record or previously admitted into evidence. Again, the tape alone, without record evidence showing that the tape was incorporated as part of the plea agreement, does not refute all of the claims raised in the motion.
 

 On remand, if records regarding the plea agreement cannot be obtained, then an evidentiary hearing may be required to establish what transpired at the plea hearing and to permit Oquendo an opportunity to prove any of his facially sufficient claims. The trial court should determine which claims are facially sufficient and not refuted by available records. The court should address only those claims at an evidentiary hearing.
 

 In addition, the trial court must permit Oquendo a reasonable opportunity to amend any insufficiently-pleaded claims if Oquendo can do so in good faith.
 
 Spera,
 
 971 So.2d at 762. While Oquendo’s motion is prefaced by his sworn allegations about what happened before his arrest in 1997 and what led to his plea, the motion does not detail the factual support for all the claims catalogued in the motion. Some claims are stated in passing and are not supported by any facts alleged in the motion. On remand, Oquendo should consider withdrawing meritless claims.
 

 We repeat the Florida Supreme Court’s admonition that
 
 Spera
 
 did not intend to authorize “shell motions.”
 
 Id.
 
 at 761.
 
 See also Gonzalez v. State,
 
 990 So.2d 1017, 1034 (Fla.2008) (discussing the amendment to rule 3.851 which prohibits “shell motions” by expressly requiring “ ‘a detailed allegation of the factual basis for any claim for which an evidentiary hearing is sought’ ”) (quoting Fla. R.Crim. P. 3.851(e)(1)(D)). While rule 3.850(c)(6) requires merely “a brief statement of the facts (and other conditions) relied on in support of the motion,” a claim that fails to specify facts necessary to support the claim is insufficient to warrant relief. Nevertheless, we believe that
 
 Spera
 
 requires at least one opportunity to amend claims to include supporting facts if the claim can be amended in good faith.
 

 We strongly condemn the practice of postconviction movants who file motions cataloguing long lists of claims unsupported by specific allegations. A movant who files such a frivolous and abusive motion, or who files a false or frivolous amendment, may be subjected to sanctions and disciplinary procedures.
 
 Spera,
 
 971 So.2d at 762.
 

 Applying Spera
 

 Although
 
 Spera
 
 may increase the post-conviction workload of the court system in the short run, if consistently applied by trial courts,
 
 Spera
 
 may ultimately reduce the burden on trial and appellate courts by ensuring that postconviction challenges are fully and fairly resolved in a single proceeding instead of in a piecemeal fashion. Piecemeal litigation of claims can be avoided by adherence to the principle announced in
 
 Spera.
 
 Because a movant now has the opportunity to correct a pleading deficiency during the initial proceedings on a motion, the rule announced in
 
 Spera
 
 has supplanted the caselaw that permitted successive motions if a prior motion was not determined on the merits.
 
 See Nelson v. State,
 
 977 So.2d 710 (Fla. 1st DCA 2008) (holding that, after giving the defendant the one opportunity to amend required by
 
 Spera,
 
 if no amendment is filed or if the claim is again insufficient, the claim can be denied
 
 with
 
 prejudice);
 
 see also Nelson v. State,
 
 875 So.2d 579, 584 (Fla.2004).
 
 Spera
 
 suggests that an insufficient motion
 
 *1006
 
 should be stricken, but did not describe the procedure to be followed where a post-conviction motion contains numerous claims only some of which are insufficient.
 

 The first district’s decision in
 
 Nelson
 
 describes a way to implement
 
 Spera
 
 that permits resolution of the entire motion, including insufficient claims, in one proceeding. 977 So.2d at 711-12. Using the procedure suggested in
 
 Nelson,
 
 a trial court should first determine whether any claims in the motion are insufficient.
 
 Id.
 
 at 711. The court should then permit the movant a reasonable opportunity to amend insufficient claims unless the deficiency cannot be cured.
 
 Spera
 
 suggested that normally a “reasonable” period of time would not exceed thirty days. 971 So.2d at 761. After permitting an opportunity to amend, if the movant does not amend the insufficient claims, or if the amended claims are again insufficient, the court may decide the entire motion on the merits and deny the insufficient claims
 
 with prejudice.
 
 As long as a postconviction movant has been afforded at least one opportunity to amend an insufficient claim, the trial court has discretion as to whether to permit any further amendment.
 
 Spera,
 
 971 So.2d at 761. We believe that the procedure outlined in
 
 Nelson
 
 would be an efficient and useful method for trial judges in this district to employ as well.
 

 False Statements Can Result in Sanctions
 

 Finally, we note that the judge at sentencing in this case seems to have believed that Oquendo lied in court. Additionally, some of the allegations in the sworn motion for postconviction relief appear less than truthful.
 

 At the sentencing hearing in March 2007, the judge observed that Oquendo had requested an interpreter although he had previously spoken English in court. Oquendo’s interpreter read a statement Oquendo had prepared that raised many of the same claims he now raises in this motion. The state questioned Oquendo extensively about many of these allegations. Oquendo was evasive in his responses, but at several points denied signing or receiving forms that were allegedly delivered to him in open court. He claimed that he fled because he was “running for his life” and that he turned himself in because he was “guided by God in his life.”
 

 Under questioning, Oquendo admitted that he had been arrested for unrelated charges under a different name and that he never volunteered to authorities his true identity before being brought before the court on the charges in this case. He, nevertheless, commented: “my fingerprints are the same always.” During questioning, Oquendo never suggested that he was told to flee and change his name by his supervising detective, as he alleges in this sworn postconviction motion. During the almost nine-year span when Oquendo was a fugitive, the detective had moved from the state of Florida and did not testify at the sentencing hearing.
 

 If, during the proceedings on remand, the trial court determines that Oquendo has brought a frivolous or malicious action, or has knowingly or recklessly made false allegations, it should make written findings and refer him to the appropriate prison authorities for disciplinary procedures. § 944.279(1), Fla. Stat. (2007);
 
 Svoboda v. State,
 
 932 So.2d 545 (Fla. 5th DCA 2006);
 
 see also Jones v. State,
 
 33 Fla. L. Weekly D2000, D2001, — So.3d-,-, 2008 WL 3540219 (Fla. 1st DCA Aug. 15, 2008).
 

 Postconviction movants should also remain aware that penalties for direct contempt of court or perjury may be imposed when movants are untruthful in postcon-viction proceedings.
 
 See Roberts v. State,
 
 515 So.2d 434 (Fla. 5th DCA 1987) (ap
 
 *1007
 
 proving a finding of direct contempt of court where the movant’s testimony was diametrically opposed to prior sworn testimony);
 
 see also Emanuel v. State,
 
 601 So.2d 1273 (Fla. 4th DCA 1992) (explaining that a prosecution for perjury is the preferred alternative, but delineating under what circumstances direct contempt of court is appropriate).
 

 Unless a credible threat of sanctions exists, postconviction movants have little incentive against saying whatever they choose in postconviction proceedings, regardless of truth. An organized system of justice cannot operate without respect for truth. Those seeking justice must respect truth. As Justice Anstead has observed, “[pjerjury poisons the well from which justice flows.”
 
 Emanuel,
 
 601 So.2d at 1276.
 

 We reverse and remand for further proceedings consistent with this opinion.
 

 KLEIN, STEVENSON and DAMOORGIAN, JJ., concur.
 

 [1]
 

 . During the course of his argument in the "Memorandum of Law” section of his motion, Oquendo asserts additional claims of trial court error and generally alleges throughout his motion that he received ineffective assistance of counsel as to all the alleged errors.